OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
      Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
      NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Ohio Historical Society, Appellee, v. State Employment
Relations Board et al., Appellants.
[Cite as Ohio Historical Soc. v. State Emp. Relations Bd.
(1993),      Ohio St.3d     .]
State Employment Relations Board -- Exclusive jurisdiction to
      decide matters committed to it pursuant to R.C. Chapter
      4117 -- Common pleas courts may not exercise jurisdiction
      over claims in declaratory judgment action that arise from
      rights created by R.C. Chapter 4117.
      (No. 91-2536 -- Submitted February 3, 1993 -- Decided June
23, 1993.)
      Appeal from the Court of Appeals for Franklin County, Nos.
91AP-97 and 91AP-98.
      This is an appeal from a judgment of the Court of Appeals
for Franklin County which held that appellee, the Ohio
Historical Society ("the Society"), is not a "public employer"
for the purposes of R.C. Chapter 4117.
      This litigation began in 1984 when appellant Ohio Council
8, American Federation of State, County and Municipal
Employees, AFL-CIO ("AFSCME") filed a petition for
representation election with appellant State Employment
Relations Board ("SERB").  AFSCME sought to represent certain
employees of the Society for the purpose of collective
bargaining.
      At approximately the same time as it filed its petition
with SERB, AFSCME filed a petition for certification of
representation with the National Labor Relations Board
("NLRB").  On June 14, 1984, the NLRB regional director to whom
the petition was assigned dismissed the petition on the grounds
that the Society is a "political subdivision" under federal
law.  The NLRB denied AFSCME's request that it review the
regional director's decision.
      The Society moved to dismiss AFSCME's state petition for
representation election on the very grounds we consider today:
that it is not a "public employer" as defined in R.C.
4117.01(B) and that SERB, therefore, does not have jurisdiction
over it.  In response to the Society's motion, SERB directed a
hearing to be held to determine, inter alia, whether the

Society is a public employer.

After hearing evidence presented by the parties, the SERB hearing officer concluded that the Society is a public employer under R.C. Chapter 4117 and issued a recommendation to SERB that it adopt that position. In February 1986, SERB issued an order finding the Society to be a public employer and directed that a representation election be held.

Using two procedural routes, the Society sought relief from the SERB order in the Court of Common Pleas of Franklin County. It filed an appeal from the SERB order pursuant to R.C. 119.12. Both SERB and AFSCME moved to dismiss the appeal on the grounds that the court lacked subject matter jurisdiction. The Society also filed a complaint for declaratory judgment pursuant to R.C. Chapter 2721. The court dismissed the Society's declaratory judgment action because, it concluded, the Society was entitled to appellate review under R.C. 119.12. The court then held that the Society is not a public employer and is, therefore, not subject to SERB's jurisdiction.

The court of appeals reversed. It held that the trial court did not have jurisdiction over the Society's R.C. 119.12 appeal because an appeal was premature. The court also reversed the trial court's dismissal of the Society's declaratory judgment action. It ruled that consideration of that action was within the sound discretion of the trial court.

The Society appealed to this court and we accepted jurisdiction. The only issue before the court was "whether [the Society] can appeal the adjudication order issued by SERB[.]" Ohio Historical Soc. v. State Emp. Relations Bd. (1990), 48 Ohio St.3d 45, 46, 549 N.E.2d 157, 158. The issue of whether the trial court could entertain the declaratory judgment action was not before the court because that portion of the court of appeals' decision was not appealed. Id. at 48, 549 N.E.2d at 160. As to the question of whether the R.C. 119.12 appeal was proper, we affirmed the judgment of the court of appeals. We held that because the election ordered by SERB had not yet taken place, SERB's order was not a final order and was, therefore, not yet appealable to the common pleas court.

In response to our decision, the common pleas court issued an order holding both the R.C. 119.12 appeal and the declaratory judgment action in abeyance pending the outcome of the representation election ordered by SERB. In April 1990, SERB conducted the scheduled election; AFSCME, however, was not successful in obtaining the votes necessary to be certified as the Society's employees' exclusive bargaining agent.

After AFSCME lost the representation election, the Society moved to renew its R.C. 119.12 appeal in the common pleas court. In December 1990, the court issued its decision. It held that the Society is not a public employer for purposes of R.C. Chapter 4117. The case number appearing in the caption of the decision indicated that it was on the R.C. 119.12 appeal alone. The caption of the court's January 4, 1991 journal entry, however, listed the case numbers for both the declaratory judgment action and the R.C. 119.12 appeal.

SERB and AFSCME appealed the trial court's decisions to the Court of Appeals for Franklin County. The court of appeals affirmed. It held that the trial court had

jurisdiction to consider the declaratory judgment action and that the Society is not a public employer under R.C. 4117.01(B).

The cause is now before this court upon the allowance of AFSCME's and SERB's motions to certify the record.

Vorys, Sater, Seymour & Pease and James P. Friedt; Fred J. Milligan, Jr., Assistant Attorney General, for appellee.

Lee I. Fisher, Attorney General, and Toki M. Clark, for appellant SERB.

Ronald H. Janetzke, for appellant Ohio Council 8, AFSCME.

Wright, J.

I

AFSCME argues that pursuant to this court's decision in Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9 (1991), 59 Ohio St.3d 167, 572 N.E.2d 87, inter alia, the common pleas court did not have jurisdiction to hear the Society's declaratory judgment action. We agree.

The court of appeals held that the issue of whether the Society is a public employer is "properly determinable by declaratory judgment." In doing so it cited our opinion in Ohio Historical Soc. v. State Emp. Relations Bd.(1990), 48 Ohio St.3d 45, 549 N.E.2d 157 ("Historical Soc. I"). This reliance was improper, however, because we expressly declined to consider the issue, since it was not before this court on appeal. Id. at 48, 549 N.E.2d at 160. The issue was squarely before the court, however, in Franklin Cty. Law Enforcement Assn., supra, which was decided the following year. It is this precedent which we must follow.

In Franklin Cty. Law Enforcement Assn., this court considered whether the common pleas court had jurisdiction to entertain a complaint requesting preliminary and permanent injunctions and a declaratory judgment. We decided that because the matters alleged in the complaint are governed exclusively by the Ohio Public Employees' Collective Bargaining Act, R.C. Chapter 4117, the trial court could not exercise jurisdiction. "The State Employment Relations Board has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117." Id. at paragraph one of the syllabus. Writing for the court, Chief Justice Moyer explained that "R.C. Chapter 4117 has created a series of new rights and set forth the remedies and procedures to be applied regarding those rights. *** [T]hose remedies and procedures are exclusive." Id. at 170, 572 N.E.2d at 90. The "procedures created in R.C. Chapter 4117 do not provide for the filing of a private action in the common pleas court." Id. When a complainant in a labor relations case asserts rights that are completely independent of R.C. Chapter 4117, the common pleas court may exercise jurisdiction. However, "[i]f a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive." Id. at 171, 572 N.E.2d at 91.

The only substantive allegation in the Society's complaint for declaratory judgment was that it is not a public employer.

Resolution of this allegation depends entirely on the provisions of R.C. Chapter 4117, over which SERB has exclusive original jurisdiction.  Determination of its jurisdiction over a petition for a representation election is to be decided, in the first instance, by SERB.  Id. at 169-170, 572 N.E.2d at 90-91.

R.C. Chapter 4117 "was meant to regulate in a comprehensive manner the labor relations between public employees and employers."  Id. at 171, 572 N.E.2d at 91.  The Declaratory Judgments Act, R.C. Chapter 2721, was not intended to be used to circumvent such comprehensive agency processes.  SERB has exclusive jurisdiction to consider issues concerning petitions for representation elections.  Common pleas courts are limited to appellate jurisdiction, at the proper time, over these and other matters arising under R.C. Chapter 4117.  As to this issue the judgment of the court of appeals is reversed.

II

AFSCME also argues that the courts below did not use the proper standard of review in reaching their decisions.  The lower courts were considering both the R.C. 119.12 administrative appeal and the declaratory judgment action filed by the Society.  In light of our disposition of the Society's declaratory judgment action, the issue presented to us is whether the courts below exercised the proper standard of review over the Society's administrative appeal.

Generally, appeals to the common pleas courts from agency adjudications are governed by Ohio's Administrative Procedure Act, which is codified in R.C. Chapter 119.  "[E]xcept where specific appeal procedures are provided, such as R.C. 4117.13(D) (unfair labor practices)[1] and R.C. 4117.23 (penalty for unlawful strike), or where appeals to a court are prohibited, such as R.C. 4117.06(A) (determination of unit appropriate for collective bargaining purposes), the general provisions of R.C. 119.12 govern the appealability of an adjudication order issued by SERB."  Historical Soc. I, supra, 48 Ohio St.3d at 46, 549 N.E.2d at 158.

R.C. 119.12 provides in part:  "The court [of common pleas] may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law."  This standard requires two inquiries:  a hybrid factual/legal inquiry and a purely legal inquiry.

In Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265, and Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 58 O.O. 51, 131 N.E.2d 390, this court described the hybrid factual/legal inquiry required by R.C. 119.12.  "It is obvious that, if the General Assembly had intended the appeal provision to afford a trial de novo, the court would be required to hear all material, relevant and probative evidence which either party might desire to present.  On the other hand, the language of [then recently amended R.C. 119.12] extends the authority of the Common Pleas Court, upon appeal, beyond that court's former authority which did not permit it to substitute its judgment for that of the agency and which confined it to determining the rights of the

parties in accordance with the statutes and law applicable." Andrews, supra, at 279-280, 58 O.O. at 53, 131 N.E.2d at 393. In undertaking its review, the common pleas court must give deference to the agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." Conrad, supra, at 111, 17 O.O.3d at 67, 407 N.E.2d at 1267-1268. "Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate or modify the administrative order." Id. at 111, 17 O.O.3d at 67, 407 N.E.2d at 1268. We take this precedent to mean that an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable. See id. at 111-112, 17 O.O.3d at 67, 407 N.E.2d at 1268. The agency's order survives the first prong of the common pleas court's review if the court finds that the evidence the agency relied on is indeed "reliable, probative, and substantial."

Andrews recognized that even before R.C. 119.12 was amended to require reviewing courts to make the hybrid inquiry described above, courts were to determine "the rights of the parties in accordance with the statutes and law applicable." Andrews, supra, 164 Ohio St. at 280, 58 O.O. at 53, 131 N.E.2d at 393. Under R.C. 119.12, a reviewing court is obligated to determine whether the agency's decision is "in accordance with law." An agency adjudication is like a trial, and while the reviewing court must defer to the lower tribunal's findings of fact, it must construe the law on its own. To the extent that an agency's decision is based on construction of the state or federal Constitution, a statute, or case law, the common pleas court must undertake its R.C. 119.12 reviewing task completely independently.

AFSCME argues that the common pleas courts must affirm SERB orders as long as they are supported by "reliable, probative, and substantial evidence." This is an incomplete statement of the proper standard of review. The Society correctly points out that the courts must also exercise independent judgment as to matters of law.

In this case none of the parties has argued that the SERB hearing officer's findings of fact are not supported by "reliable, probative, and substantial evidence." Thus, the inquiry for the reviewing courts is whether, accepting the facts found by the hearing officer as true, the Society is a public employer, as a matter of law, under R.C. 4117.01(B). We find that the courts below properly limited their review to this purely legal question.

### III

### A

The origins and development of the Society were detailed in a 1974 report prepared by the Society for Governor Gilligan and the General Assembly. Ten Year Plan of the Ohio Historical Society (June 1974) 5-7. The report's discussion of the organization's history highlights the tension between the

Society's public and private roles:

"Ohio's prehistoric Indian sites were being looted of their primitive art treasures. State archives were being removed from the State House. The personal papers of Ohio leaders were being destroyed or dispersed. No state organization existed to halt the loss of Ohio's patrimony." Id. at 5.

In 1884, Governor Hoadly and the Secretary of State began looking for supporters to form a historical society. On March 12, 1885, one hundred and fifty citizens met in the Ohio Senate chamber and organized the Society. Id.

"The interest of a combination of public officials and private persons in the creation of a state historical agency cast the newly formed group into a quasi-public, quasi-private framework. Governor Hoadly and the other founders envisioned the Society as becoming a large and effectively administered museum and library institution. They expected the organization to assume a leadership role in the cultural life of the state. To achieve these ambitious objectives, the founders anticipated state support of historical activities, a desire promptly translated into reality." Id. at 5-6.

The informal arrangement between the private, non-profit Society and the state of Ohio lasted until 1963 when that relationship was questioned in the courts. Id. at 7. A declaratory judgment action was brought in Franklin County Common Pleas Court to determine "whether or not the Society's policies and procedures, particularly in regard to the handling of funds of a private source, should be administered strictly in accordance with the regulations governing state government operations." Id. The court held that the Society was a private, non-profit corporation and was, therefore, required to operate under laws governing corporations rather than under the procedures and regulations that apply to state agencies. The court also held, however, that a new basis for state support of the Society's public functions had to be enacted. The General Assembly responded to the court's decision by amending R.C. 149.30 to create a situation in which a formal contractual relationship could exist between the state and the Society. Id.

In considering the petition for representation election filed by AFSCME in this case, the SERB hearing officer made findings of fact that were adopted by SERB (with modifications not relevant here) in its decision. These undisputed findings paint a picture of the Society as it is today. Among them are the following:

(1) The Society is governed by a constitution which was written and adopted by its members. The constitution vests the government of the Society in a board of trustees ("board"). The board includes eighteen members, nine of whom are elected from the membership and nine of whom are appointed by the Governor. The officers of the corporation are elected annually by the board.

(2) The board is responsible for formulating and approving the policies of the society, including personnel and labor relations policies.

(3) The Society by-laws provide that the board delegates administrative duties for the operation of the Society to a director, who acts as the chief administrative officer. The

board establishes the terms of the director's employment.

(4) The wages, terms, and conditions of employment of all employees are set by the board.

(5) The Society is, in part, self-supporting. It generates revenue from, among other things, admission fees to museums and other historic sites, the sale of meals, and the sale of goods and other services.

(6) The Society enters into contractual relationships with different public and private entities for the provision of services.

(7) The Society contracts with the state of Ohio to perform certain public functions designated in R.C. 149.30 for which the Society receives public funds.

(8) Approximately sixty-five to seventy percent of the Society's total operating budget is comprised of state appropriations. This money funds services contracted for between the Society and the state. The remaining thirty to thirty-five percent of the Society's operating budget represents private money from retail sales, admission fees, membership dues, private donations, contract fees and other similar activities.

(9) Society wage rates and salary increases are comparable to those of the state. No specific legislative or state approval is necessary for granting a Society wage increase.

(10) Society employees participate in the Public Employees Retirement System.

(11) Society employees are not covered by Ohio civil service laws.

(12) The Society is not required to consult or obtain approval from the state as to any matter relating to employment policies.

(13) The Auditor of State is required to annually examine the Society's records.

(14) Former state employees hired by the Society receive credit for state work time.

(15) The Society has a regular mail pick-up at the Ohio Statehouse.

(16) Approximately ninety-five percent of the Society's 1985 funds for capital improvements came from the state.

(17) The Society does not use the same rule-making procedures as state agencies do.

(18) The Society has a state agency number for identification purposes in the state budget.

Based upon these and other findings of fact, the SERB hearing officer concluded that the Society is a "public employer" under R.C. 4117.01(B). SERB came to the same conclusion, and recognized that "a respectable argument could be mounted that the Society is a public employer based on the similarities between the functions of the society and those of state government." SERB, however, rested its decision on the ground that because Society employees are "public employees" under R.C. 4117.01(C), the Society is necessarily a public employer under R.C. 4117.01(B).

This appeal presents three issues for the court's consideration. The first is whether the common pleas court had jurisdiction to consider the Society's declaratory judgment

action.  The second is whether the common pleas court and the court of appeals used the proper standard of review in considering the Society's R.C. 119.12 appeal from SERB's decision.  The third is whether the Society is a "public employer" under R.C. 4117.01(B).

B

The substantive issue presented by this case is whether the Society is a "public employer" under R.C. 4117.01(B).  If the Society is a public employer, SERB may exercise jurisdiction over it for labor relations purposes.  See Cincinnati Metro. Hous. Auth. v. State Emp. Relations Bd. (1990), 53 Ohio St.3d 221, 560 N.E.2d 179.  Both R.C. 4117.01(B) and 4117.01(C) are relevant to the parties' arguments and our disposition.  R.C. 4117.01(B) provides:

"'Public employer' means the state or any political subdivision of the state located entirely within the state including, without limitation, any municipal corporation with a population of at least five thousand according to the most recent federal decennial census, county, township with a population of at least five thousand in the unincorporated area of the township according to the most recent federal decennial census, school district, state institution of higher learning, any public or special district, any state agency, authority, commission, or board, or other branch of public employment." (Emphasis added.)

R.C. 4117.01(C) provides:

"'Public employee' means any person holding a position by appointment or employment in the service of a public employer, including any person working pursuant to a contract between a public employer and a private employer and over whom the national labor relations board has declined jurisdiction on the basis that the involved employees are employees of a public employer[.]"  It then lists fifteen specific groups of employees that are not included in the definition of "public employees."

Under R.C. 4117.01(B) an entity is a public employer if it is one of three things:  (1) the state, (2) a political subdivision of the state, or (3) an "other branch of public employment."  We come to this conclusion by way of the plain language of the statute. "[T]he state" and "any political subdivision of the state" are defined to include ten specific government entities (any "municipal corporation with a population of at least five thousand * * *, county, township with a population of at least five thousand * * *, school district, state institution of higher learning, any public or special district, any state agency, authority, commission, or board").  The words "without limitation," however, indicate that entities considered "the state" or a "political subdivision" are not limited to those listed.  After the final example of a state or political subdivision is listed (a board), the definition of public employer somewhat vaguely reaches "other branch[es] of public employment."

SERB argues that the Society is a public employer because it fits under all three categories set forth in R.C. 4117.01(B).  It asserts that the Society is "the state" because the state of Ohio has turned over significant state functions to the Society and substantially funds its operations.  SERB's

position is that the Society has become, at least, a de facto state agency.  SERB also argues that the Society is a "political subdivision of the state" because it was "created for a public purpose, [and] authorized to exercise a limited portion of the sovereign power of the state."  Finally, SERB asserts that the Society is a "branch of public employment" for two reasons:  the Society has the "attributes" of a public employer and its employees are public employees under R.C. 4117.01(C).  SERB states that "[t]he General Assembly could not have intended the ludicrous result urged by [the Society] that 'public employees' do not work for 'public employers' and do not have the right to collectively bargain specifically granted them in R.C. 4117.03."

AFSCME focuses its argument on SERB's last point:  that the definitions of "public employer" and "public employee" must be read together and in light of the policies of the labor law.  AFSCME asserts that "[a] private not for profit corporation can be a public employer and its employees public employees as those terms are defined in R.C. [Chapter] 4117 as R.C. 4117.01(B) and R.C. 4117.01(C) must be read in pari materia."  It argues that Society employees are public employees under R.C. 4117.01(C) and that, therefore, the Society is a "branch of public employment."

The Society argues that the General Assembly could have extended its definition of "public employer" to private entities such as the Society but chose not to do so.  Instead, the Society argues, the legislature "intended to limit the application of the Act to truly public entities."  (Emphasis sic.)  It reasons that an entity can be "public" or "private" but not both -- the terms are mutually exclusive.

The Society places heavy reliance on our decision in Cincinnati Metro. Hous. Auth. v. State Emp. Relations Bd., supra ("CMHA").  One issue in that case was whether CMHA is a "public employer" and is subject to SERB's jurisdiction under R.C. Chapter 4117.  This court cited R.C. 4117.01(B) and concluded that "the General Assembly clearly intended to include within such definition any state-created public body such as CMHA."  Id., 53 Ohio St.3d at 224, 560 N.E.2d at 182.  We reasoned that because a metropolitan housing authority is defined as "a body corporate and politic" under R.C. 3735.31 and "political subdivision" has been defined to include bodies "corporate and politic," CMHA is a public employer under R.C. Chapter 4117.  The Society argues that our decision in CMHA holds that only "state-created public bod[ies]" can be "public employers."

The court of appeals agreed with the Society.  The court held that "R.C. Chapter 4117 is strictly limited in its application to the regulation of employment relations between public employers and public employees.  It has no application to the private sector."  The court reasoned that while R.C. 149.30 gives the Society many attributes of a public entity, "nothing contained in that statute has altered the basic legal status of [the Society] as a private, non-private [sic] corporation."

1

SERB's position that the Society is a state or a political subdivision is not persuasive.  The issue is not, as SERB would

have it, whether the Society possesses a larger or smaller number of the attributes of a government entity. The issue is straightforward: whether the Society is in fact a government entity. Quite simply, the Society is not public; it was neither created by the state nor is it subject to state control.

The Society is a private, not-for-profit corporation. It was created by a group of individuals, in their capacities as private citizens, "[t]o promote a knowledge of archaeology and history, especially in Ohio * * * ." Section 1, Article II, Constitution of the Ohio Historical Society. The SERB hearing officer found that the Society is governed by a constitution written and adopted by its members; the constitution may be amended by a simple majority of votes cast by Society members. A board of trustees ("board") runs the Society. The corporate constitution, not a state statute, provides that half of the trustees are elected from the Society's membership and half are appointed by the Governor of Ohio. The board elects corporate officers to operate the Society and these officers report directly to the board. The Society is, in short, not a public or government entity. It was neither created by the state nor is it subject to state control. In both form and substance the Society is a private corporation.

Neither the Society leaders nor its members are subject to the political process. The members of its board, whether appointed by the Governor or elected by the membership, are responsible to the membership of the Society alone. Its corporate officers are responsible to the board alone. Neither directly nor indirectly do the citizens of the state of Ohio exercise control over the Society. Simply because a large portion of the Society's budget is derived from public funds does not render it a state agency.

The fact that the Society has a close relationship with the state does not make it an arm of the state. The Society's relationship with the state is based on contract. The Society contracts with the state to perform certain public functions designated in R.C. 149.30 for which the Society receives public funds. It is authorized by its constitution to enter into contracts with the state. The state is authorized to contract with the Society by R.C. 149.30. Nowhere, however, is the Society required by statute to perform state functions.

Moreover, the Society is not one of the ten entities specifically deemed to be "the state or any political subdivision of the state" by R.C. 4117.01(B). The Society is not a municipal corporation, a county, a township, a school district, an institution of higher learning, a public or special district, a state agency, authority, commission, or board.

The General Assembly could have expressly included entities like the Society in its definition of "public employer." In 1970, fourteen years before the General Assembly adopted the current definition of "public employer," the Pennsylvania legislature adopted a definition of "public employer" that almost certainly would include the Society. In the Pennsylvania Public Employee Relations Act, 43 P.S. Section 1101.101 et seq., the definition of "public employer" expressly includes "any nonprofit organization or institution ***
receiving grants or appropriations from local, State or Federal

governments ***."  43 P.S. Section 1101.301(1).  Our General Assembly apparently chose not to follow Pennsylvania's example.

The Society is also not a "political subdivision" under state law.2  R.C. Chapter 4117 does not specifically define "political subdivision" and there is no general statutory definition of "political subdivision."  In the absence of specific definitions, however, case law and Attorney General opinions provide a general definition:  "A political subdivision is a limited geographical area of the State, within which a public agency is authorized to exercise some governmental function."  1972 Ohio Atty. Gen. Ops. No. 72-035 (citing other authorities).  Because the Society does not exercise governmental authority in a limited geographical area, it is not a political subdivision.

2

The question of whether the Society is an "other branch of public employment" is more difficult to resolve.  AFSCME's position is, essentially, that the General Assembly intended to give all public employees, except those specifically excluded from coverage, the right to collectively bargain under state law and that the Society's employees are "public employees" under R.C. 4117.01(C).  The Society's position is that only employees of truly public entities have the right to collectively bargain under Ohio law.

AFSCME argues that employees of the Society are public employees pursuant to R.C. 4117.01(C).  A "public employee" is a person in the service of a public employer, including "any person" (1) "working pursuant to a contract between a public employer and a private employer" and (2) "over whom the national labor relations board has declined jurisdiction on the basis that the involved employees are employees of a public employer."  R.C. 4117.01(C).  We agree that the Society's employees fit the second prong of this test: the NLRB declined to take jurisdiction over the employees because, under federal law, they are considered employees of a political subdivision. In so holding, the NLRB cited the National Labor Relations Act, Section 2(2) (Section 152[2], Title 29, U.S. Code), and Natl. Labor Relations Bd. v. Natural Gas Util. Dist. of Hawkins Cty. (1971), 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206.

We do not believe, however, that Society employees are "working pursuant to a contract between a public employer and a private employer."  The record does not show that certain Society employees are hired to perform discrete tasks, all of which are "in the service of" the state of Ohio.  Society employees are employed to do the work of the Society -- some of which is the private work of the Society and some of which may be characterized as public work pursuant to a contract with the state.  The employees are paid from Society, not state, funds. While sixty-five to seventy percent of the Society's budget is comprised of state appropriations, thirty to thirty-five percent of its budget comes from independent Society revenue raising.  The SERB hearing officer found that the Society generates its own revenues from admission fees to museums, the sale of meals, and the sale of goods and other services.  Thus, we cannot say that Society employees are employed solely as a result of the Society's contractual relationship with the

state.  The Society's privately funded work is inextricably intertwined with the Society's publicly funded work.  Its employees are, therefore, not "public employees."

Moreover, as discussed above, the Society is a private entity.  Whatever the policy reasons for treating the Society as a "branch of public employment," we cannot do so without support from the language or structure of R.C. Chapter 4117. If its employees were "public employees" under R.C. 4117.01(C), we could conclude that the Society is a "branch of public employment."  But such is not the case.  The Society is a private entity and, accordingly, we hold that the Society is not a public employer under R.C. 4117.01(B).

The judgment of the court of appeals as to this issue is affirmed.

Judgment affirmed in part<br>and reversed in part.

Moyer, C.J., and Pfeifer, J., concur.
Douglas, J., concurs separately.
A.W. Sweeney, Resnick and F.E. Sweeney, JJ., dissent.

FOOTNOTE:
1  See Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 533 N.E.2d 264.  The standard of review applied in Lorain ("[t]he findings of the board as to the facts, if supported by substantial evidence on the record as a whole, are conclusive") is specifically provided in R.C. 4117.13(D) to be used by courts reviewing SERB determinations of unfair labor practices.  See Lorain City Bd. of Edn. at 259, 533 N.E.2d at 266.

2  The NLRB regional director concluded that, under the National Labor Relations Act, Section 151 et seq., Title 29, U.S. Code, the Society is a "political subdivision."  In Natl. Labor Relations Bd. v. Natural Gas Util. Dist. of Hawkins Cty. (1971), 402 U.S. 600, 602-603, 91 S.Ct. 1746, 1748, 29 L.Ed.2d 206, 209, the United States Supreme Court held that "[f]ederal, rather than state, law governs the determination, under {2(2) [of the Act] whether an entity created under state law is a 'political subdivision' of the State and therefore not an 'employer' subject to the Act."

Ohio Historical Soc. v. State Emp. Relations Bd.

Douglas, J., concurring.    The only real issue presented by this case is whether the Ohio Historical Society ("OHS") is a "public employer."  The court of appeals, in its opinion, identified the question as "[t]he singular issue before us * * *."  Appellant SERB and appellee OHS did not brief or argue, except in a general way, the other issues commented on and decided by the majority.

Is OHS a public employer pursuant to R.C. 4117.01(B)?  I think not and I concur with the majority's discussion of the issue as found in Part III(B)(1) and (2) of the majority opinion.  While OHS may have some of the indicia of a public employer, and while it may even walk like, look like and quack like a public employer, the fact remains that it is still a private not-for-profit corporation and, under these peculiar circumstances, cannot be a public employer.

I note in passing, as the majority does in fn. 2, that the regional director of the NLRB has concluded that OHS is, under

federal law, a "political subdivision."  Given our decision today, I would respectfully suggest that this matter be reviewed by proper authorities given the test set forth and approved by the United States Supreme Court in Natl. Labor Relations Bd. v. Natural Gas Util. Dist. of Hawkins Cty. (1971), 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206. Ohio Historical Soc. v. State Emp. Relations Bd.

Alice Robie Resnick, J., dissenting.  Although I have misgivings about the manner in which the majority resolves some of the procedural matters in this case, I limit my discussion to the principal issue presented.  That issue is whether the Ohio Historical Society ("the Society") is a "public employer" for purposes of R.C. Chapter 4117.  A thoughtful consideration of relevant statutory provisions points to one inescapable conclusion:  Even if one accepts the somewhat dubious assumption that the Society is a private corporation, the Society is clearly a "public employer" as that term is used in R.C. 4117.01(B).  The majority's determination that the Society is not a public employer is irreconcilable with the undisputed facts underlying this case.  I dissent.

I

The employees of the Society are "public employees" pursuant to R.C. 4117.01(C), and therefore their employer must be a "public employer" pursuant to R.C. 4117.01(B), because the Society inescapably is an "other branch of public employment" as specified in the last phrase of R.C. 4117.01(B).

R.C. 4117.01(C) specifically provides that the term "public employee" includes any person who works "pursuant to a contract between a public employer and a private employer and over whom the national labor relations board ['NLRB'] has declined jurisdiction on the basis that the involved employees are employees of a public employer[.]"  (Emphasis added.)  I believe that the General Assembly, through this provision, was addressing precisely the situation presented by this case. SERB's order finding the Society to be a public employer relied on R.C. 4117.01(C).  While SERB noted that "a respectable argument could be mounted that the Society is a public employer based on the similarities between the functions of the [s]ociety and those of state government," SERB realized there was no need to entertain that inquiry.  The Society's employees clearly fit the definition of "public employees" contained in the "including" language of R.C. 4117.01(C).

It is apparent that employees of the Society work pursuant to a contract between the state and the Society.  The majority even seems to recognize this, stating that "[t]he Society's relationship with the state is based on contract.  The Society contracts with the state to perform certain public functions designated in R.C. 149.30 for which the Society receives public funds."  However, the majority appears to reason that, because the Society's privately funded work and publicly funded work are "inextricably intertwined," the Society's employees are not working "solely" pursuant to a contract with the state, and thus are not "public employees."  However, the word "solely" does not appear anywhere in R.C. 4117.01(C).  As noted by the majority, the Society performs numerous public functions and receives approximately sixty-five to seventy percent of its total operating budget from state appropriations.  It is clear

that the Society's employees work "pursuant to a contract" with the state.  Because the NLRB has already declined jurisdiction over the Society's employees, both requirements of R.C. 4117.01(C) are met, and the Society's employees are "public employees."

The concurring opinion seems to intimate that the NLRB erred by declining to exercise jurisdiction over the employees.  However, the propriety of the NLRB's determination actually is irrelevant.  What is of consequence is that the NLRB ruled as it did, thereby fulfilling one of the specific requirements of R.C. 4117.01(C).  Moreover, the General Assembly, when it enacted R.C. Chapter 4117, attempted to provide that all employees in Ohio would be covered either by that chapter (if public employees) under SERB's jurisdiction unless expressly excluded, or by the National Labor Relations Act (if not public employees) under the jurisdiction of the NLRB.  The General Assembly therefore chose to define "public employee" two ways in R.C. 4117.01(C).  In most cases, the definition is straightforward:  a public employee is one who works for a public employer.  However, the legislature did not stop there in defining "public employee," but continued with the "including" language.  A public employee can also be one who works for a private employer which has some, but not all, the attributes of a public employer.  When an employer's status as a public employer is in doubt, the legislature provided that that employer's employees might still be "public employees" when the NLRB declined to exercise jurisdiction over them.

If the Society's employees are "public employees" (as they obviously are), it is glaringly apparent that the Society, as their employer, must be a "public employer" for R.C. Chapter 4117 purposes.  The Society's argument that sometimes employees may be "public employees," but their employer may at the same time not be a "public employer" should be unequivocally rejected.  R.C. 4117.01(B) must be read in pari materia with R.C. 4117.01(C).  A "public employer" is, by definition, one who employs "public employees."  And a "public employee" is, by definition, one who works for a "public employer."  When the definition of either R.C. 4117.01(B) or (C) is fulfilled, the definition of the other provision is also fulfilled.  The General Assembly's decision to add the open-ended phrase "other branch of public employment" at the end of R.C. 4117.01(B) is an indication that in some instances a "public employer" may not possess all of the attributes of a state body.  The Society, by advocating that we read R.C. 4117.01(B) and (C) as if they are unrelated, fails to appreciate the legislative intent that all employees in Ohio fall within the jurisdiction of either the NLRB or SERB.

R.C. 4117.22 requires that "Chapter 4117. of the Revised Code shall be construed liberally for the accomplishment of the purpose of promoting orderly and constructive relationships between all public employers and their employees."  The majority's narrow interpretation of the definitional provisions of R.C. 4117.01 cannot be reconciled with the overall purpose of R.C. Chapter 4117, which is to afford collective bargaining rights, specified in R.C. 4117.03, to all "public employees." As this court recognized in Cincinnati Metro. Hous. Auth. v. State Emp. Relations Bd. (1990), 53 Ohio St.3d 221, 226, 560

N.E.2d 179, 184: "[R.C. Chapter 4117's] overriding purpose is embodied in the very broad definition of 'public employer,' to extend the coverage of [R.C. Chapter 4117] as widely as possible in order to prevent the disruption of important public services by labor disputes."

The majority states that "[i]n both form and substance the Society is a private corporation." The majority appears to rely heavily on the finding that the Society is a private entity to reach the ultimate conclusion that the Society cannot be a "public employer." The majority places too much emphasis on the word "private" and does not thoughtfully consider the purposes underlying R.C. Chapter 4117, including R.C. 4117.01(C)'s clear provision that sometimes the employees of a "private employer" can be "public employees." Cincinnati Metro. Hous. Auth., supra, does not at all stand for the proposition argued by the Society that only a public body can be a public employer. Rather, that case is an affirmation that an expansive, not a limiting, definition should be given to the term. The Society clearly falls within the definition provided by the General Assembly. The majority's analysis, which is based on a very narrow interpretation of "public employer," cannot be accepted. The proper approach is diametrically opposed to that of the majority, who would appear to require the legislature to enact a statute explicitly declaring the Society to be a public employer before it would acknowledge that fact.

Even though the Society argues that it is a private entity, the Society itself has admitted that it is not private for all purposes. In State ex rel. Fenley v. Ohio Historical Soc. (1992), 64 Ohio St.3d 509, 597 N.E.2d 120, the issue presented involved whether R.C. 149.43 (Ohio's public records law) obligated the Society to provide copies of public records by mail. Not at issue in that case was the question whether the Society is subject to the public records law--the Society clearly conceded that it is. For an entity to fall within the public records law, R.C. 149.43(A)(1) provides that the entity must be a "public office," a term defined in R.C. 149.011(A). In State ex rel. Toledo Blade Co. v. Univ. of Toledo Found. (1992), 65 Ohio St.3d 258, 602 N.E.2d 1159, this court determined that the University of Toledo Foundation, a private nonprofit corporation, is a public office for R.C. 149.43 purposes, and is subject to the public records law. See, also, State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn. (1988), 40 Ohio St.3d 10, 531 N.E.2d 313 (a private, nonprofit corporation which performs a public function and is supported by public tax money is a "public office" within the meaning of R.C. 149.011[A], and is subject to the public records law). Even though determining whether an entity is a public office for R.C. 149.43 purposes differs significantly from determining whether it is a public employer for R.C. Chapter 4117 purposes, each inquiry requires a consideration of the distinction between a public and a private entity. Univ. of Toledo Found. and Fostoria Hosp. Assn. readily stand for the general proposition that although an entity may be a private one, it may still be public for some purposes. If the Society, allegedly a private entity, can be a public office for R.C. 149.43 purposes (as it has admitted it is), the Society also

conceivably could be a public employer for R.C. Chapter 4117 purposes.  As explained above, the Society is unquestionably a "public employer."  The Society's purported status as a private corporation does not preclude that determination, because R.C. 4117.01(C) specifically provides that, in the proper circumstances, the employees of a "private employer" are "public employees."  This case clearly presents those proper circumstances.

In summary, the Society's employees work "pursuant to a contract between a public employer and a private employer," and "the national labor relations board has declined jurisdiction on the basis that the involved employees are employees of a public employer[.]"  R.C. 4117.01(C).  Because those two conditions are met, the Society qualifies as an "other branch of public employment" within the meaning of R.C. 4117.01(B), and the Society is a "public employer."  I would reverse the judgment of the court of appeals on this issue.

                                II

The majority analyzes at length whether the Society qualifies as "the state or any political subdivision of the state" for R.C. 4117.01(B) purposes, ultimately determining that the Society is neither the state nor a political subdivision of it.  Given the foregoing view (expressed in Part I of this dissenting opinion) that R.C. 4117.01(C) specifically leads to the conclusion that the Society is a "public employer," there is no real need to reach this question.  However, the majority's reasoning cannot go unchallenged, and so I address the issue.

R.C. 4117.01(B)'s definition of "public employer" includes "*** any state agency, authority, commission, or board, or other branch of public employment."  It is apparent that the Society is a "state agency" in the sense of this definition.  The Society has numerous attributes of a state agency, which considered together make it at the very least the de facto equivalent of a state agency for R.C. Chapter 4117 purposes.  It is incomprehensible how the majority is able to acknowledge these attributes, and yet find the Society is not a public employer.  As the majority notes, the Society possesses the following characteristics:

     --Pursuant to the Society's constitution, nine members (one-half) of the Society's board of trustees are appointed by the Governor.

     --The Society enters into contracts with public, as well as private, entities.

     --The Society performs numerous public functions for the state, as detailed in R.C. 149.30.

     --State appropriations provide approximately sixty-five to seventy percent of the Society's total operating budget.

     --Employees of the Society are explicitly authorized to participate in the Public Employees Retirement System by R.C. 149.30.

     --The Society's records are examined annually by the Auditor of State.

     --The Society awards credit for previous state work time to former state employees it hires.

     --State appropriations provided approximately ninety-five percent of the Society's 1985 funds for capital improvements.

--The Society has a state agency number in the state budget for identification purposes.

These characteristics, taken in the aggregate, present an overwhelming scenario.  Were several of these factors not present, this might have been a closer case.  However, the large amount of state funding, taken alone, is a clear indicium of a public employer.  Likewise, when an employer's employees participate in the Public Employees Retirement System, that alone also provides a strong indicator that the employer must be a public employer.  The factors the majority relies on to find that the Society is not a public employer do not come close to countering the case in favor of finding that the Society is a public employer.  However, as explained in Part I of this dissenting opinion, there is an even stronger ground for finding that the Society is a public employer, so that a resort to consideration of whether the Society possesses indicia of a public employer should not even be necessary.

A.W. Sweeney and F.E. Sweeney, JJ., concur in the foregoing dissenting opinion.