[Cite as *Izzo v. Dept. of Edn.*, 2019-Ohio-1008.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Carissa Izzo et al., | : | |
| Appellants-Appellants, | : | No. 18AP-138 |
| | | (C.P.C. No. 17CV-3361) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Ohio Department of Education, | : | |
| Appellee-Appellee. | : | |

---

# D E C I S I O N

## Rendered on March 21, 2019

---

**On brief**: *Graff & McGovern LPA*, and *John A. Izzo*, for appellants. **Argued**: *John A. Izzo.*

**On brief**: *Dave Yost*, Attorney General, and *Marissa J. Palumbo*, for appellee. **Argued**: *Marissa J. Palumbo.*

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Carissa and John A. Izzo, appellants, appeal from the judgment of the Franklin County Court of Common Pleas, in which the court affirmed the order of the Ohio Department of Education ("ODE"), appellee.

{¶ 2} Appellants reside on Little Falls Drive in Dublin, Ohio. Their property is in the Columbus City School District ("CCSD"), but appellants desired to transfer their address to the Hilliard City School District ("HCSD"). Appellants completed a petition to transfer the address, pursuant to R.C. 3311.24, and submitted the petition to CCSD. On April 1, 2016, CCSD forwarded the petition to ODE. ODE requested that appellants, CCSD, and HCSD submit answers to an information form and "25 Questions" form,

pursuant to Ohio Adm.Code 3301-89-02(B), and all parties responded. ODE then informed appellants, CCSD, and HCSD that a hearing would be held if any of the parties requested one. Appellants requested a hearing.

{¶ 3} On December 12, 2016, a hearing on the matter was held before a hearing officer for the State Board of Education ("board"), which is part of ODE. Appellants and CCSD appeared at the hearing, and HCSD submitted its arguments in writing, although appellants objected to the participation of CCSD and HCSD because they had not filed requests for a hearing. Neither CCSD nor HCSD were in favor of the transfer.

{¶ 4} On January 5, 2017, the hearing officer issued a report and recommendation, recommending the transfer be denied. Appellants filed objections. On March 27, 2017, the board issued an order approving the hearing officer's report.

{¶ 5} Appellants appealed the board's order to the Franklin County Court of Common Pleas, and, on January 24, 2018, the common pleas court affirmed the board's order. Appellants appeal the judgment of the common pleas court, asserting the following two assignments of error:

> [I.] The hearing officer and the Department allowed the Columbus City School District and the Hilliard City School District to participate in the hearing, which was contrary to law.
>
> [II.] The hearing officer's Report and Recommendation is not based upon reliable, probative, and substantial evidence and not in accordance with law.

{¶ 6} Appellants argue in their first assignment of error that ODE erred when it allowed CCSD and HCSD to participate in the hearing, even though they did not submit requests for a hearing. An appellate court exercises plenary review on the question of whether the board's order was in accordance with the law, and on other issues of law. *Paolucci v. Ohio Div. of Real Estate*, 10th Dist. No. 09AP-450, 2009-Ohio-5551, ¶ 7. Appellants here argue that neither CCSD nor HCSD should have been permitted to participate in the hearing because they did not request a hearing in the matter pursuant to R.C. 119.07, 3311.24, and *Goldman v. State Med. Bd. of Ohio*, 110 Ohio App.3d 124 (10th Dist.1996) ("*Goldman I*"). Appellants contend the hearing officer should not have permitted HCSD to submit in writing its position and arguments, and CCSD should not

have been permitted to make a statement, present evidence, and cross-examine witnesses at the hearing.

{¶ 7}     R.C. 119.06 provides, in pertinent part:

> No adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13 of the Revised Code. Such opportunity for a hearing shall be given before making the adjudication order except in those situations where this section provides otherwise.

{¶ 8}     R.C. 119.07 provides, in pertinent part:

> Except when a statute prescribes a notice and the persons to whom it shall be given, in all cases in which section 119.06 of the Revised Code requires an agency to afford an opportunity for a hearing prior to the issuance of an order, the agency shall give notice to the party informing the party of the party's right to a hearing. Notice shall be given by registered mail, return receipt requested, and shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days of the time of mailing the notice. The notice shall also inform the party that at the hearing the party may appear in person, by the party's attorney, or by such other representative as is permitted to practice before the agency, or may present the party's position, arguments, or contentions in writing and that at the hearing the party may present evidence and examine witnesses appearing for and against the party. A copy of the notice shall be mailed to attorneys or other representatives of record representing the party. This paragraph does not apply to situations in which such section provides for a hearing only when it is requested by the party.

{¶ 9}     R.C. 3311.24(A)(2) provides, in pertinent part:

> The board of education of the district in which such proposal originates shall file such proposal, together with a map showing the boundaries of the territory proposed to be transferred, with the state board of education prior to the first day of April in any even-numbered year. The state board of education may, if it is advisable, provide for a hearing in any suitable place in any of the school districts affected by such proposed transfer of territory. The state board of education or its representatives shall preside at any such hearing.

{¶ 10} In *Goldman I*, this court held the appellant, a practitioner of cosmetic therapy, was not entitled to participate in the disciplinary hearing before the state medical board because he waived his right to a hearing when he failed to request a hearing after proper notice. On remand, a hearing examiner held an evidentiary hearing wherein the testimony of a board investigator was taken and certain evidence was admitted. The appellant and his counsel were present; however, they were not permitted to present evidence, cross-examine the witness, or make opening and closing remarks. After the common pleas court affirmed the board's order, upon further appeal to this court, this court, in *Goldman v. State Med. Bd.*, 10th Dist. No. 98AP-238 (Oct. 20, 1998) ("*Goldman II*"), held that the appellant, by waiving his right to appear, lost his right to present evidence, cross-examine witnesses, and make opening and closing statements. We explained that the fundamental requirement of procedural due process is notice and the opportunity to be heard, and such is subject to waiver, which is what appellant did in that case.

{¶ 11} However, we do not find either *Goldman I* or *Goldman II* applicable to the present case. Notably, the *Goldman* cases involved medical licensing, and there existed only one interested party, a medical professional, and one supervisory body, the state medical board, which is the body authorized to supervise and discipline medical professionals practicing in the state. R.C. 4731.22(B). The present case involves a completely different situation. Here, there are three interested parties: appellants, HCSD, and CCSD, as well as a supervisory body, the board, which is the governing body charged with supervision of public education in the state. *See Cincinnati City School Dist. Bd. of Edn. v. State Bd. of Edn. of Ohio*, 176 Ohio App.3d 157, 2008-Ohio-1434, ¶ 3 (1st Dist.) (the State of Ohio Board of Education is the governing body charged with general supervision of public education in the state, while ODE is the administrative unit and organization through which the policies, directives, and powers of the State Board of Education are administered). Appellants fail to cite any cases involving multiple interested parties, not to mention a school-district-transfer case, in which only the party filing the request for hearing was allowed to participate in the hearing. As ODE points out, permitting all interested parties to participate once a hearing has been scheduled allows ODE to fully develop a record on which to base a decision.

{¶ 12} Furthermore, the board has discretion to grant a hearing on its own accord regardless of whether a party requests one, pursuant to R.C. 3311.24(A)(2) ("[t]he state board of education may, if it is advisable, provide for a hearing in any suitable place in any of the school districts affected by such proposed transfer of territory"), and clearly all parties would receive notice of the hearing and an opportunity to be heard under such circumstances. Therefore, given the board has the power to call a hearing on its own and allow all the parties to participate, we cannot find that only the party filing a request for a hearing is entitled to participate when only that party files a request. For these reasons, we overrule appellants' first assignment of error.

{¶ 13} Appellants argue in their second assignment of error that the report and recommendation of ODE's hearing officer was not based on reliable, probative, and substantial evidence and was not in accordance with law. In an R.C. 119.12 administrative appeal, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. The Supreme Court of Ohio has defined reliable, probative, and substantial evidence as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true.
> (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.
> (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

(Footnotes omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). In applying its standard of review, a trial court must "give due deference to the administrative resolution of evidentiary conflicts." *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980). "[A]n agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993). Although the reviewing court must defer to an agency's findings of fact, it must construe the law on its own. *Id.*

{¶ 14} On appeal to this court, the standard of review is more limited. While the common pleas court must examine the evidence, "[s]uch is not the charge of the appellate court." *Bd. of Edn. of Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). In reviewing the trial court's determination of whether the board's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the trial court abused its discretion. *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992). " 'Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.' " *Rossford Exempted Village School Dist.* at 707, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988).

{¶ 15} The standards, factors, and procedures for administrative consideration of a petition for transfer of school district territory are set forth in Ohio Adm.Code 3301-89. Ohio Adm.Code 3301-89-01 sets forth the board's general policies regarding transfers of territory and provides at subsection (F), "[a] request for transfer of territory shall be considered upon its merit with primary consideration given to the present and ultimate good of the pupils in the affected districts." Ohio Adm.Code 3301-89-02(D) outlines procedures for considering a petition for transfer of territory and sets forth 25 questions that each school district implicated by a requested transfer must answer to aid the board in its consideration. Those questions are:

> (1) Why is the request being made?
>
> (2) Are there racial isolation implications?
>
> (a) What is the percentage of minority students in the relinquishing district?
>
> (b) What is the percentage of minority students in the acquiring district?
>
> (c) If approved, would the transfer result in an increase in the percentage of minority pupils in the relinquishing district?
>
> (3) What long-range educational planning for the students in the districts affected has taken place?

(4) Will the acquiring district have the fiscal and human resources to efficiently operate an expanded educational program?

(5) Will the acquiring district have adequate facilities to accommodate the additional enrollment?

(6) Will both the districts involved have pupil population and property valuation sufficient to maintain high school centers?

(7) Will the proposed transfer of territory contribute to good district organization for the acquiring district?

(8) Does the acquiring district have the capacity to assume any financial obligation that might accompany the relinquished territory?

(9) Will the loss of either pupils or valuation be detrimental to the fiscal or educational operation of the relinquishing school district?

(10) Have previous transfers caused substantive harm to the relinquishing district?

(11) Is the property wealth in the affected area such that the motivation for the request could be considered a mechanism for the receiving school district to receive additional real estate tax revenue?

(12) Are there any school buildings in the area proposed for transfer? If so, was the school building constructed within the last five years?

(13) What are the distances between the school buildings within:

(a) The present school district?

(b) The proposed school district?

(14) What are the distances between:

(a) The area proposed for transfer and each building in the present school district?

**(b)** The area proposed for transfer and each building in the proposed school district?

**(15)** If approved, will the requested transfer create a school district with noncontiguous territory?

**(16)** Is the area being requested an isolated segment of the district of which it is a part?

**(17)** Will the municipal and school district boundary lines become coterminous?

**(18)** For each district affected:

**(a)** What is the inside millage?

**(b)** What is the outside operating millage?

**(c)** What is the bonded indebtedness millage?

**(19)** What is the levy history in each of the affected districts?

**(20)** Will the transfer of school district territory cause a negative impact on the state of Ohio?

**(21)** How will the projected revenues and expenditures as set forth in the most recent five-year forecasts be impacted by the transfer, if implemented? Each district shall provide the department of education with copies of their most recent five-year forecasts.

**(22)** What designation did each of the affected districts and building receive on their state report cards for the last five years?

**(23)** How will the proposed transfer affect the educational offerings/programs of the affected districts?

**(24)** What course offerings will be available through the acquiring district, as compared to the relinquishing district?

**(25)** How will the proposed transfer affect the athletic programs and extracurricular activities of the affected districts? Will similar programs and activities be available to students of the affected districts?

{¶ 16} Ohio Adm.Code 3301-89-03(B) contains a non-exhaustive list of factors to be considered:

> (1) Documented agreements made by public agencies involved in municipal annexation proceedings should be honored;
>
> (2) A previous agreement entered into by the school districts concerned should be honored unless all concerned districts agree to amend it;
>
> (3) The statement signed by the school district boards of education after negotiations as required by paragraph (D)(4) of Rule 3301-89-04 of the Administrative Code;
>
> (4) There should not be undue delay in requesting a transfer for school purposes after a territory has been annexed for municipal purposes;
>
> (5) The transfer shall not cause, preserve, or increase racial isolation;
>
> (6) All school district territories should be contiguous unless otherwise authorized by law;
>
> (7) School district boundary lines that have existed for a long period of time should not be changed if substantial upheaval results because of long-held loyalties by the parties involved;
>
> (8) The pupil loss of the relinquishing district should not be such that the educational program of that district is severely impaired;
>
> (9) The fiscal resources acquired should be commensurate with the educational responsibilities assumed;
>
> (10) The educational facilities of districts should be effectively utilized; and
>
> (11) The preference of the residents with school-age children who live in the territory sought to be transferred to another school district shall be considered if evidence establishing that preference is admitted, provided the articulated reasons are not contrary to existing statutes or rules.

{¶ 17} The standard for considering requests under R.C. 3311.24 "focuses on educational impact as the key to whether such requests should be approved." *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 86. " '[T]he several factors for consideration set forth in Ohio Adm.Code 3301-89-02(B) and 3301-89-03(B) are intended to be an integral part of the board's transfer decision with primary consideration given to the present and ultimate good of all the students who are affected by the proposed transfer.' " *Id.* at ¶ 50, quoting *Garfield Hts. City School Dist. v. State Bd. of Edn.*, 62 Ohio App.3d 308, 319 (10th Dist.1990). Each transfer request is decided on its particular facts under the required balancing test. *Bartchy* at ¶ 81. Thus, " '[w]hen a transfer of school districts is proposed, a balancing must take place between many competing factors in order to achieve the desired result of achieving what is in the best interests of the students concerned.' " *Id.* at ¶ 51, quoting *Garfield Hts.* at 323. The weight to be given to those factors "necessarily depends on the full context of the situation." *Id.* at ¶ 84. "[T]he [board's] balancing of the factors should be treated with deference." *Id.* at ¶ 89.

{¶ 18} In the present case, appellants first argue the hearing officer failed to consider the best interests of the students. Appellants claim the hearing officer, instead, focused on the interests of the school districts and others in the neighborhood. We disagree. The hearing officer acknowledged the transfer would benefit appellants and their children, in that their community ties are with Hilliard, Hilliard schools are closer, their children's friends from Columbus live far away, they are active at the Hilliard library and parks, and their social activities are primarily in Hilliard. However, the hearing officer also correctly acknowledged the school districts and others in the neighborhood opposed the transfer. Insofar as appellants are implying the board failed to weigh the competing interests properly, the weight to be given these factors is generally within the province of the board. We can find no error here, when the hearing officer specifically acknowledged evidence on both sides of the issue, but decided that one party's evidence deserved more weight.

{¶ 19} Appellants also argue the hearing officer's statement that HCSD and CCSD are both parties to the "Win-Win Agreement," which generally provides that the districts will not accept transfers of territory from the other district, is irrelevant because there was

no evidence in the record that the property in question was subject to the Win-Win Agreement and, in fact, it is not. While appellants testified their property was not subject to the Win-Win Agreement, there is little other specific evidence on this issue. Regardless, we find no prejudicial error here. Although the hearing officer noted HCSD and CCSD were both parties to the Win-Win Agreement, the hearing officer did not make any specific findings related to the agreement and did not explicitly indicate how the agreement was important to the present case. Read in context, however, the implication is that the Win-Win Agreement provides evidence that HCSD and CCSD generally view territorial stability as important. Notwithstanding, insomuch as the hearing officer's actual factual finding that CCSD and HCSD were parties to the agreement is correct, we can find no prejudicial error.

{¶ 20} Appellants next argue the hearing officer failed to explain why contiguous parcels were important in his opinion. They claim HCSD created an island for Washington Elementary School, and the documentation showing the Northwest Planning Area shows the property in question is not contiguous to CCSD. We disagree with appellants' contentions. That the school district be contiguous is specifically set forth as a factor to consider in Ohio Adm.Code 3301-89-03(B)(6) and provides that "[a]ll school district territories should be contiguous unless otherwise authorized by law." Also, Ohio Adm.Code 3301-89-02(D)(15) and (D)(16) express a preference for contiguous school-district territories. Furthermore, based on a review of the maps and evidence, we agree there exists a strip of land, the "common area" for appellants' subdivision, separating appellants' property from HCSD, so that appellants' parcel would not be contiguous with HCSD. Hilliard's superintendent agreed appellants' parcel was not contiguous with HCSD. The board also noted that transferring only appellants' home, while leaving the rest of the street part of CCSD, would create a non-contiguous island of territories. Thus, we find the trial court did not abuse its discretion when it found the board's order was supported by reliable, probative, and substantial evidence.

{¶ 21} Relatedly, appellants also argue the hearing examiner failed to explain why he discounted the determination of HCSD that the property in question is contiguous to HCSD. Appellants claim the property at issue is across the street from HCSD, and the hearing officer incorrectly stated a transfer of the property in question would result in

non-contiguous territory. We agree that in submitting answers to the 25 questions, HCSD responded that, if approved, the requested transfer would not create a school district with non-contiguous territory; however, HCSD superintendent, Dr. John Marschhausen, indicated in a subsequent letter that the territory in the transfer request was not contiguous to HCSD. Furthermore, appellants seem to admit in their argument that the property at issue is "across the street" from HCSD. As mentioned above, there is a strip of property between appellants' property and HCSD, thereby rendering the property not contiguous with HCSD.

{¶ 22} Appellants also take issue with the hearing officer's use of "practical sense," in finding that it does not make "practical sense" to select appellants' residence out of the entire subdivision and place it in HCSD, and argue that "practical sense" is not an outlined consideration for the hearing officer. Initially, we note that, pursuant to Ohio Adm.Code 3301-89-03(B), the board may consider additional factors that are not necessarily limited to those enumerated in that section. Regardless, we do not view "practical sense" as much a "factor" as it is a method of analysis. We find this argument without merit.

{¶ 23} Appellants also argue that, contrary to the hearing officer's finding, appellants did not pursue the transfer because it was more convenient and beneficial for them. Instead, appellants claim, the testimony was that the distance to the elementary school took a toll on the students, educationally and socially. Appellants assert the hearing officer should have given more weight to their preference under Ohio Adm.Code 3301-89-03(B)(11). However, we do not see a practical distinction between the board's finding that appellants believe the transfer would be "convenient" and "beneficial," and appellants claim that the transfer takes an educational and social toll on the students. The board recognized the transfer would benefit the students by requiring less travel. Certainly, being "convenient" and "beneficial" play into the alleged educational and social toll. Notwithstanding, the board is assigned the task of weighing the factors and determining how much weight should have been given to appellants' preference. We find no error in these respects.

{¶ 24} Appellants next argue there was no evidence that either school would be harmed by the transfer. Appellants contend the hearing officer incredulously agreed with

HCSD that it could not afford to transfer two students into its district, as they presented evidence that HCSD had recently passed a levy. Appellants are again attempting to have this court reweigh and balance the factors, which is not the standard of review for this court. Appellants are correct that HCSD had recently passed a levy, but HCSD also presented evidence that asserted it could not afford to have the land transferred into the district. HCSD's superintendent indicated there were currently a large number of apartments, condominiums, and single-family homes planned or under construction in appellants' area, and they would tax the capacity of HCSD, so adding territory transfers could only exacerbate the problem. It was within the province of the board to believe HCSD despite the fact the district had recently passed a levy. Therefore, this argument is without merit.

{¶ 25} Based on our above findings, we find the common pleas court did not abuse its discretion when it found the board's order was supported by reliable, probative, and substantial evidence. Appellants' second assignment of error is overruled.

{¶ 26} Accordingly, we overrule appellants' two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.

_____