OPINION
On April 7, 2000, Jeffrey Kistler Jones was mailed two notices of a May 2, 2000 hearing before the Liquor Control Commission ("commission") to determine whether his liquor permit(s) should be suspended or revoked or forfeiture ordered. The first notice set forth the following alleged violation:
 On August 3, 1999, your agent and/or employee, BARBARA BUSSARD and/or your unidentified agent and/or employee, did pay for alcoholic beverages, to wit, beer and/or wine from a manufacturer, supplier, distributor or state agency store with a check that is not honored by the permit holder's bank-in violation of 4301:1-1-43(I)[,] a regulation of the Ohio Administrative Code.
The second notice set forth the following two alleged violations:
 Violation #1 — On November 9, 1999, or prior thereto your agent and/or employee, JEFFREY JONES, did allow a person other than the person named in your permit to operate the business authorized by said permit-in violation of Section 4303.27 of the Ohio Revised Code.
 Violation #2 — On November 9, 1999, your agent and/or employee, JEFFREY JONES and /or your unidentified agent and/or employee, did sell, assign, transfer or pledge its D2, 2X, 3 liquor permit without the written consent of the Department of Commerce, Liquor Division-in violation of Section 4303.29 of the Ohio Revised Code.
A hearing was held on May 2, 2000. Counsel for Mr. Jones denied the violations and stipulated to the evidence submitted as to the alleged violation of Ohio Adm. Code 4301:1-1-43(I) and R.C. 4303.27. The alleged violation of R.C. 4303.29 was dismissed. No other evidence was submitted, and Mr. Jones's counsel made arguments relating essentially to mitigating factors.
On May 23, 2000, the commission mailed its orders which found Mr. Jones in violation of Ohio Adm. Code 4303:1-1-43(I) and R.C. 4303.27 as set forth in the two remaining alleged violations. The commission revoked Mr. Jones's permit(s). Mr. Jones filed a motion for reconsideration which was denied.
Mr. Jones appealed the commission's order to the Franklin County Court of Common Pleas. The parties filed briefs. On February 14, 2001, the common pleas court rendered a decision and judgment entry affirming the commission's order.
Mr. Jones (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:
 1. The Court of Common Pleas erred, when it found that the Liquor Commission Orders revoking Appellant's liquor permit were supported by reliable, probative, and substantial evidence and were in accordance with law.
 2. The lower Court erred as a matter of law by upholding the Liquor Commission Orders since the Liquor Commission lacked the authority to promulgate a rule regarding spirituous liquor sales in a state agency.
 3. The lower Court erred as a matter of law by upholding the Liquor Commission Orders since the Liquor Commission failed to consider any mitigation of penalty.
 4. The lower Court erred as a matter of law by upholding the Liquor Commission Orders since the Liquor Commission violated Appellant's due process rights.
 5. The lower Court erred as a matter of law by upholding the Liquor Commission Orders since there was no showing that the deliberation and final action did occur publicly.
In his first assignment of error, appellant contends the common pleas court erred in affirming the commission's order because such order was not supported by reliable, probative and substantial evidence and was not in accordance with law. The determination of whether an agency order is supported by reliable, probative and substantial evidence involves essentially a question of the absence or presence of the requisite quantum of evidence. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 111. This determination inevitably involves a consideration of the evidence, and to a limited extent would permit the substitution of judgment by the common pleas court. Id.
In undertaking this hybrid form of review, the common pleas court must give due deference to the administrative resolution of evidentiary conflicts; however, the findings of the agency are by no means conclusive. Id. An agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless the court determines that the agency's findings are internally inconsistent, impeached by the evidence of a prior inconsistent statement, rest on improper inferences or are otherwise unsupportable. VFW Post 8586 at 81.
While it is incumbent on the common pleas court to examine the evidence, this is not the function of the court of appeals. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. This court determines only if the common pleas court abused its discretion, which encompasses not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency. Id. Absent such an abuse of discretion, this court may not substitute its judgment for that of the agency or common pleas court. Id.
Appellant was found in violation of Ohio Adm. Code 4301:1-1-43(I), which states:
 Any permit holder who pays * * * for alcoholic beverages from a manufacturer, supplier or distributor, with a check that is not honored for payment by the permit holder's bank, shall be subject to suspension or revocation of its permit by the liquor control commission.
As indicated above, the violation at issue alleged that appellant's agent and/or employee, Barbara Bussard, paid for alcoholic beverages, specifically, beer and/or wine, with a check that was not honored by the permit holder's bank. Appellant contends, in essence, that the evidence did not show Ms. Bussard was an employee/agent of appellant's, and the evidence showed that Ms. Bussard tried to buy liquor, not beer and/or wine, as alleged in the notice of violation.
The evidence before the commission on this violation was uncontested. Such evidence establishes the following. On August 3, 1999, Barbara Bussard issued a check to the "Liquor Locker" for $328.38. The check indicated that it was for "Liquor." The name on the check was "BUSSARD'S NEST." The check was returned for insufficient funds. A certified letter was mailed to the permit holder's address notifying him that he had ten days to take corrective action. Ms. Bussard received this letter on August 17, 1999. On October 7, 1999, investigators went to the permit premises and submitted a violation notice to Ms. Bussard, in the name of appellant, for the "bad" check.
The common pleas court did not abuse its discretion in finding that the evidence before the commission constituted sufficient reliable, probative and substantial evidence to support a violation of Ohio Adm. Code4301:1-1-43(I). The permit premises was a bar named the Bussard's Nest, and the check issued was in the name of the Bussard's Nest. The fact that appellant himself did not sign the check is immaterial. Further, in writing the check and in attempting to pay for alcoholic beverages for use in the bar, Ms. Bussard was acting as an agent for the permit holder. Hence, the acts of Ms. Bussard are imputed to appellant.
Further, the fact that Ms. Bussard wrote the word "Liquor" in the memo section of the check (and not beer and/or wine) is not fatal to the alleged violation. The violation notice stated that appellant had paid for "alcoholic beverages, to wit, beer and/or wine" and did not use the word "liquor." However, Ohio Adm. Code 4301:1-1-43(I) uses only the term "alcoholic beverages" which includes beer, wine and/or liquor, and the violation notice included this term. The violation notice was proper and, further, appellant has not shown any prejudice from the lack of the word "liquor" in such notice. The evidence showed that appellant, through his agent, attempted to pay for alcoholic beverages with a bad check. Thus, a violation of Ohio Adm. Code 4301:1-1-43(I) was shown.
The common pleas court also affirmed the commission's finding of a violation of R.C. 4303.27. R.C. 4303.27 states:
 Each permit issued * * * shall authorize the person named to carry on the business specified at the place * * * described * * *. * * * Such permit does not * * * authorize any person other than the one named in such permit to carry on such business at the place * * * named, except pursuant to compliance with the rules an orders of the division governing the assignment and transfer of permits, and with the consent of the division. * * *
When the investigators visited the Bussard's Nest to deliver the violation notice regarding the bad check, Ms. Bussard informed them that she and her husband were purchasing the Bussard's Nest from appellant under a land contract. This information led to an investigation as to who was operating the permit premises, culminating in appellant being charged with violating R.C. 4303.27.
Appellant contends that it was error to affirm the commission's order as to this violation because there was no evidence regarding the status of the Bussards as employees of appellant, and the investigators never informed the Bussards that a transfer application had to be filed. Again, appellant stipulated to the evidence with regard to this violation. Such evidence establishes the following.
During a visit to the Bussard's Nest, investigators learned that the Bussards were allegedly purchasing the bar from appellant. Ms. Bussard told the investigators that she and her husband were paying all the expenses for the permit premises. Ms. Bussard subsequently provided the investigators with a management agreement and lease between the Bussards and appellant and numerous cancelled checks dating from January 1998 through September 1999.
The investigator's report stated that a review of the lease showed the Bussards were not purchasing the premises but were paying weekly rent to lease the permit premises. The Bussards paid all federal, state and county taxes and utility bills, and paid for all the liquor, food and repairs for the permit premises. The vendor's license was in appellant's name, dba the Bussard's Nest, and the food service license was in the Bussards' name, dba the Bussard's Nest. The cancelled checks showed, among other things, that the Bussards had paid for alcohol, maintenance, insurance, food and bar supplies for the Bussard's Nest. The report stated that the documents given to the investigators showed that the Bussards had complete control of the bar except that the liquor and vendor's licenses were in appellant's name.
The management agreement was dated January 2, 1998 and called for the Bussards to manage the bar and restaurant for a term of four years and five months with an option to extend such term. As part of the management agreement, the Bussards agreed to enter into and comply with an accompanying lease agreement. Such lease agreement, dated January 2, 1998, leased the permit premises to the Bussards. The Bussards were given the option to purchase the premises and the business during the term of the lease for $180,000, with a certain percentage of the monthly payments applied toward this purchase price.
The lease called for the Bussards to pay for the permit premises' maintenance and repairs, and for all water, sewer, gas, electric and telephone charges. Further, the Bussards had to pay all real estate taxes, assessments, fire insurance, public and liquor business liability insurance, and inventory and personal property insurance.
As of November 9, 1999, a transfer of ownership application had not been filed.
The evidence submitted to the commission showed that nearly complete control of the business was given to the Bussards. The overwhelming evidence showed that the Bussards carried on the business at the permit premises. Appellant contends that he could not be found in violation of both Ohio Adm. Code 4301:1-1-43(I) and R.C. 4303.27 because, in essence, the Bussards could not be both employees/agents (as alleged in the violation of Ohio Adm. Code 4301:1-1-43[I]) and the actual operators of the business (as alleged in the violation of R.C. 4303.27). We do not necessarily agree with appellant's assertion in this regard. However, we do not address this assertion because the violations were separate and distinct violations with separate and distinct evidence submitted as to each violation. As indicated above, the evidence submitted for each alleged violation was sufficient.
For all of the above reasons, the common pleas court did not abuse its discretion in affirming the commission's order. Accordingly, appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends the commission had no authority to promulgate Ohio Adm. Code 4301:1-1-43(I) because the Division of Liquor Control, not the commission, has the exclusive authority to promulgate rules relating to spirituous liquor. The commission asserts that appellant has waived this argument because it was not raised at the administrative level. However, the implication of appellant's argument is that the commission had no jurisdiction over the subject-matter contained in the alleged violation, namely, sales of spirituous liquor, and that such authority resides with the Division of Liquor Control. Hence, appellant's argument is one addressing subject-matter jurisdiction, which cannot be waived. Therefore, we address appellant's second assignment of error.
We note that this issue sets forth a question of law, which this court reviews de novo. See Ohio Historical Soc. v. State Emp. Relations Bd. (1993), 66 Ohio St.3d 466, 471; Moran v. Ohio Dept. of Commerce, Real Estate Div. (1996), 109 Ohio App.3d 494, 497. Appellant cites R.C.4301.10 in support of his argument and asserts that the Division of Liquor Control sets the prices of spirituous liquor. R.C. 4301.10 sets forth the powers and duties of the Division of Liquor Control. None of these powers could be reasonably construed to grant exclusive authority to the Division with regard to the payment by permit holders for liquor and other alcoholic beverages.
Indeed, it is the commission who seems to have significant authority over permit holders. R.C. 4301.03 states, in pertinent part:
 The liquor control commission may adopt and promulgate * * * rules, standards, requirements, and orders necessary to carry out Chapters 4301. and 4303. of the Revised Code * * *. The rules of the commission may include the following:
 (A) Rules with reference to applications for and the issuance of permits for the manufacture, distribution, transportation, and sale of beer and intoxicating liquor, and the sale of alcohol; and rules governing the procedure of the division of liquor control in the suspension, revocation, and cancellation of such permits;
 (B) Rules and orders providing in detail for the conduct of any retail business authorized under permits issued pursuant to such chapters, with a view to ensuring compliance with such chapters and laws relative thereto, and the maintenance of public decency, sobriety, and good order in any place licensed under such permits. * * *
Further, R.C. 4301.04 sets forth the powers of the commission and states, in pertinent part:
 The liquor control commission has the following powers which it may exercise by the vote of a majority of the commissioners:
(A) To suspend, revoke, and cancel permits. * * *
The commission has the authority to adopt rules providing in detail for the conduct of any retail business, and it has the power to revoke and/or suspend permits. Such grant of power certainly includes the authority to promulgate a rule that subjects a permit holder to possible revocation or suspension of a permit if the permit holder pays for alcoholic beverages with a check that is not honored. The regulation at issue, Ohio Adm. Code4301:1-1-43(I), is directly related to the business of the permit holder, and the commission had the authority to promulgate such rule.
Accordingly, appellant's second assignment of error is overruled.
In his third assignment of error, appellant contends the commission erred in failing to consider any mitigation of penalty. However, as this court has stated on numerous occasions, citing Citing Henry's Café, Inc. v. Bd. of Liquor Control (1959), 170 Ohio St. 233, we have no authority to modify a penalty lawfully imposed by the commission. See American Legion Post 200 Club v. Ohio Liquor Control Comm. (Dec. 20, 2001), Franklin App. No. 01AP-684, unreported; Zygo, Inc. v. Ohio Liquor Control Comm. (Sept. 20, 2001), Franklin App. No. 01AP-181, unreported; Lindner v. Ohio Liquor Control Comm. (May 31, 2001), Franklin App. No. 00AP-1430, unreported; and Vesely v. Ohio Liquor Control Comm. (Mar. 29, 2001), Franklin App. No. 00AP-1016, unreported.
R.C. 4301.25(A) allows the commission to revoke a permit if it finds a violation of its rules or regulations. As we have already determined, the common pleas court did not err in affirming the commission's order which found violations of Ohio Adm. Code 4301:1-1-43(I) and R.C. 4303.27. Therefore, this court has no authority to modify the lawfully-imposed penalty of revocation.
Accordingly, appellant's third assignment of error is overruled.
In his fourth assignment of error, appellant contends the commission violated his due process rights because the investigators never informed him or the Bussards of the requirement of filing a transfer of ownership application. Appellant seems to be arguing that the law gives a prospective transferee a grace period in which to file such application, and the investigators should have informed the parties of such grace period during their investigation into who was operating the business.
There is no provision, statutory or otherwise, that imposes such a duty on the part of the commission or Division of Liquor Control. In addition, due process does not dictate that the commission provide such notice.[1]
For all of the above reasons, appellant's due process rights were not violated by the commission. Accordingly, his fourth assignment of error is overruled.
In his fifth and final assignment of error, appellant contends the common pleas court erred in affirming the commission's order because, in essence, such order was not adopted at an open meeting. We reject appellant's assertion that the commission violated the Sunshine Law.
The order finding appellant in violation of certain statutory and regulatory provisions and imposing the penalty of revocation was pursuant to the commission's quasi-judicial functions as set forth in R.C. 4301.04, 4301.27, 4301.28 and Ohio Adm. Code 4301:1-1-65. Such quasi-judicial proceedings afford a permit holder notice and the opportunity to be heard.[2] Further, the permit holder may appeal from an order of the commission pursuant to R.C. 119.12.
Because the commission was acting as a quasi-judicial body in this matter, it was not subject to R.C. 121.22. See TBC Westlake, Inc.[3]
Further, as to appellant's contention regarding the vote of the commission members, R.C. 4301.04 states that a majority of the three-member commission (i.e., two out of three) is needed to revoke a permit. Such requirement was complied with during the proceedings and final adjudication on this matter.
For the reasons discussed above, appellant's fifth assignment of error is overruled.
Having overruled each of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KENNEDY and LAZARUS, JJ., concur.
[1] Appellant cites C H Investors, Inc. v. Ohio Liquor Control Comm. (Dec. 9, 1999), Franklin App. No. 98AP-1519, unreported, in support of his position. However, C H Investors, Inc. addressed due process in the context of the adequacy of the service of the hearing notice. Therefore, it is not on point and does not support appellant's position.
[2] A quasi-judicial proceeding is one that settles a justiciable dispute requiring evaluation and resolution. TBC Westlake, Inc. v. Hamilton Cty. Bd of Revision (1998), 81 Ohio St.3d 58, 62.
[3] We note that the issue in Angerman v. Ohio State Medical Bd. (1990), 70 Ohio App.3d 346 was whether deliberations of a quasi-judicial tribunal were subject to R.C. 121.22. Hence, any other statement by the court relating to orders and application of R.C. 121.22 thereto was dicta.