THE STATE EX REL. TRIPLETT *v.* ROSS, JUDGE.

[Cite as *State ex rel. Triplett v. Ross,*
111 Ohio St.3d 231, 2006-Ohio-4705.]

(No. 2006–0742—Submitted August 8, 2006—Decided September 13, 2006.)

**Per Curiam.**

{¶ 1} This is an action for a writ of prohibition to prevent a municipal court and its judge and clerk from ordering attorneys who seek court appointments to complete and return a declaration specified by the Ohio Patriot Act to certify that they do not provide material assistance to a terrorist organization. Because the Ohio Patriot Act does not require that the declaration be completed when the attorney makes less than $100,000 annually from these appointments, we grant the writ in part.

{¶ 2} On December 14, 2005, the General Assembly enacted the Ohio Patriot Act, Am.Sub.S.B. No. 9 ("S.B. 9"), to implement the provisions of the "Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot Act) Act of 2001," Pub.L.No. 107–056, 115 Stat. 272, as amended. One of the purposes of the act, according to its title, is "to establish requirements for state and local compliance with federal homeland security authorities and laws pertaining to terrorism and homeland security." See, also, R.C. 9.63. Another purpose of the Ohio Patriot Act is "to limit licensing, employing, and doing business with persons who have provided material assistance to an organization on the United States Department of State Terrorist Exclusion List." Governor Taft signed the Ohio Patriot Act on January 11, 2006, and the act became effective on April 14, 2006. S.B. 9.

{¶ 3} The Ohio Patriot Act requires the Director of Public Safety to prepare a document to serve as a declaration of material assistance/nonassistance, which includes six questions to determine whether applicants for certain identified licenses, persons doing business with a government entity, or applicants under final consideration for government employment have provided material assistance to an organization on the United States Department of State Terrorist Exclusion List. R.C. 2909.32, 2909.33, and 2909.34. The declaration requires that the persons answer the following questions:

{¶ 4} "(1) Are you a member of an organization on the U.S. Department of State Terrorist Exclusion List?

{¶ 5} "(2) Have you used any position of prominence you have within any country to persuade others to support an organization on the U.S. Department of State Terrorist Exclusion List?

{¶ 6} "(3) Have you knowingly solicited funds or other things of value for an organization on the U.S. Department of State Terrorist Exclusion List?

{¶ 7} "(4) Have you solicited any individual for membership in an organization on the U.S. Department of State Terrorist Exclusion List?

{¶ 8} "(5) Have you committed an act that you know, or reasonably should have known, affords 'material support or resources' to an organization on the U.S. Department of State Terrorist Exclusion List?

{¶ 9} "(6) Have you hired or compensated a person you knew to be a member of an organization on the U.S. Department of State Terrorist Exclusion List or a person you knew to be engaged in planning, assisting, or carrying out an act of terrorism?"   See R.C. 2909.32(A)(2)(b), 2909.33(A)(1), and 2909.34(A)(1).

{¶ 10} An affirmative answer or a failure to answer "no" to any of the questions on the declaration serves as a disclosure that the person provided material assistance to an organization listed on the terrorist exclusion list, which would generally result in the denial of a state license, or the denial of a contract or employment with the state, its instrumentalities, and its political subdivisions. R.C. 2909.32(C);  2909.33(B), (C), and (D);  and 2909.34(B) and (C).

{¶ 11} On April 10, 2006, four days before the effective date of the Ohio Patriot Act, respondent Bellefontaine Municipal Court Clerk Marty Carmean issued a memorandum on the letterhead of respondent Bellefontaine Municipal Court directed to all counsel who seek or obtain court appointments to represent indigent persons in the municipal court.   Carmean instructed these attorneys to immediately complete and return, pursuant to S.B. 9, the "Declaration Regarding Material Assistance/Nonassistance to a Terrorist Organization" prepared by the Ohio Department of Public Safety, Division of Homeland Security.   The declaration included the six questions specified in the Ohio Patriot Act. The form is titled "Government Business and Funding Contracts" and notes that "[i]n the event of a denial of a government contract or government funding due to a positive indication that material assistance has been provided to a terrorist organization, or an organization that supports terrorism as identified by the U.S. Department of State Terrorist Exclusion List, a review of the denial may be requested."   The certification at the end of the declaration specifies that "if this declaration is not completed in its entirety, it will not be processed and [the person] will be automatically disqualified" from doing business with the state government.

{¶ 12} Relator, Marc S. Triplett, is an attorney licensed in Ohio who has sought and obtained court appointments to represent indigent persons in the Bellefontaine Municipal Court. Triplett remains interested in obtaining municipal court appointments but does not want to complete the declaration. Triplett did not fill out, sign, and return the declaration to Carmean. Notwithstanding Triplett's refusal to complete the declaration, the municipal court has appointed him to represent an indigent person after the April 14, 2006 effective date of the Ohio Patriot Act. Triplett does not make $100,000 or more per year from his court appointments.

{¶ 13} On April 14, 2006, Triplett filed this action for a writ of prohibition against respondents, Bellefontaine Municipal Court, municipal court Judge John L. Ross, and Carmean. In his complaint, Triplett requests a peremptory writ to order respondents (1) "to cease efforts to have attorneys who seek court appointments from Bellefontaine Municipal Court to represent the indigent accused in that court complete and return the Form," (2) "to cease declaring that failure of an otherwise licensed, willing, and eligible attorney to complete and return the Form will be a disqualification from obtaining court appointments in the Bellefontaine Municipal Court," and (3) "not to remove his name from the list of those who are eligible to receive and do receive court appointments in Bellefontaine Municipal Court."

{¶ 14} In his initial pleadings, Triplett acknowledged the applicability of the Ohio Patriot Act to court appointments of attorneys to represent indigent persons. For example, in his complaint, Triplett asserted that a failure to answer questions in the declaration would disqualify a person from any government contract, including, specifically in this case, from receiving court appointments to represent indigent persons charged with crimes who were subject to the jurisdiction of the Bellefontaine Municipal Court. And in Triplett's brief in support of his complaint, Triplett specified that "the General Assembly, through the Ohio Patriot Act, has declared that only persons who attest that they are not terrorists, do not employ terrorists, and do not provide material support to terrorists may represent indigent persons on appointment in the courts of Ohio" and that "by sending the form to 'All Court Appointed Counsel,' the Bellefontaine Municipal Court, its Clerk, and its Judge have implemented that requirement."

{¶ 15} Triplett claimed he was entitled to the requested extraordinary relief in prohibition because the pertinent portions of the Ohio Patriot Act, i.e., R.C. 2909.32 and 2909.33, unconstitutionally usurped the Supreme Court of Ohio's exclusive authority to regulate the practice of law. Respondents submitted an answer and a motion to dismiss. Because Triplett challenged the constitutionality of R.C. 2909.32 and 2909.33, Ohio Attorney General Jim Petro filed a motion to intervene as a respondent, and an answer.

{¶ 16} Based upon Triplett's complaint and the parties' pleadings, we granted an alternative writ, granted the Attorney General's motion to intervene, and issued a schedule for the presentation of evidence and briefs. *State ex rel. Triplett v. Ross,* 109 Ohio St.3d 1492, 2006-Ohio-2762, 848 N.E.2d 856. The parties stipulated to the evidence. The Ohio Public Defender and the Ohio Association of Criminal Defense Lawyers filed amicus curiae briefs in support of Triplett.

{¶ 17} This cause is now before us for a consideration of the merits.

## Prohibition: Court Appointments

{¶ 18} Triplett asserts that no court, court clerk, or judge can condition court appointments or other matters of the practice of law upon completion of the "Declaration Regarding Material Assistance/Nonassistance to a Terrorist Organization." In order to be entitled to the requested extraordinary relief in prohibition, Triplett must establish that (1) the municipal court, its judge, and its clerk are exercising judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Brown v. Butler Cty. Bd. of Elections,* 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 21.

{¶ 19} As previously mentioned, Triplett requests a writ of prohibition, in part, to prevent the municipal court respondents from disqualifying an otherwise eligible attorney who has not completed the declaration from obtaining court appointments and to prohibit those respondents from removing his name from the list of attorneys eligible to receive court appointments.

{¶ 20} Triplett has failed to prove the necessary requirements for the writ as to this claim. See, e.g., *State ex rel. Enyart v. O'Neill* (1995), 71 Ohio St.3d 655, 656, 646 N.E.2d 1110 (relators in prohibition case bear the burden of proof). The parties' stipulated evidence establishes that respondents have not conditioned Triplett's eligibility for municipal court appointments on his completion of the declaration. Instead, Triplett has been appointed to represent at least one indigent person in the municipal court despite his refusal to complete and return the declaration.

{¶ 21} Triplett is correct that our issuance of an alternative writ in this case stayed during the pendency of this action the municipal court respondents from disqualifying him from appointments based on his refusal to complete and return the declaration. See S.Ct.Prac.R. X(6) ("an alternative writ in a prohibition case stays proceedings in the action sought to be prohibited until final determination of the Supreme Court"); *State ex rel. Downs v. Panioto,* 107 Ohio St.3d 347, 2006-Ohio-8, 839 N.E.2d 911, ¶ 21.

{¶ 22} His suggestion that the municipal court respondents would not have appointed him in the absence of the alternative writ, however, is not supported by the evidence. In their motion to dismiss the complaint, *which preceded our alternative writ,* the municipal court respondents specifically asserted that "despite Relator's failure to complete and return the required form, he has remained on Respondents' court appointed counsel list and has continued to receive appointments. The law simply prohibits him from being paid from government funds." Therefore, the municipal court respondents have consistently acted so as not to condition court appointments upon the completion of the declaration.

{¶ 23} Therefore, notwithstanding the language in the declaration, respondents have neither automatically disqualified Triplett from obtaining municipal court appointments nor removed his name from the list of those attorneys eligible to be appointed. Consequently, Triplett is not entitled to a writ of prohibition to prevent actions that respondents have not performed and have shown no indication of performing, i.e., disqualifying attorneys who fail to complete the declaration from obtaining court appointments and removing their names from the list of appointment-eligible attorneys. Cf. *State ex rel. Denton v. Bedinghaus,* 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 26 ("to the extent that [relators] sought to prevent a policy that had already been discontinued by [respondents], their prohibition claim was moot"); *State ex rel. Consumers' Counsel v. Pub. Util. Comm.,* 102 Ohio St.3d 301, 2004-Ohio-2894, 809 N.E.2d 1146, ¶ 12 (request for writ of prohibition to prevent commission from granting applications for rehearing rendered moot when commission denied applications). Accordingly, we deny the writ as to this claim.

## Prohibition: Applicability of R.C. 2909.33

{¶ 24} Triplett's primary claim in his complaint is for a writ of prohibition to order the municipal court respondents "to cease efforts to have attorneys who seek court appointments from Bellefontaine Municipal Court to represent the indigent accused in that court complete and return the Form." The municipal court respondents claim they are authorized to enforce the declaration-completion requirement under R.C. 2909.33, which they contend permits them to withhold payment for Triplett's representation of indigent persons in the municipal court.

{¶ 25} Although Triplett requested the extraordinary relief in prohibition based upon the unconstitutionality of R.C. 2909.32 and 2909.33, Triplett now asserts that these provisions are not applicable to court appointments to represent indigent persons and thus cannot support the municipal court respondents' requirement that he complete the declaration.

{¶ 26} Triplett did not allege or argue in his complaint or brief in support of his complaint that R.C. 2909.32 and 2909.33 are inapplicable to him or other attorneys seeking to be appointed by a municipal court to represent indigent

persons. Nor did he seek to amend his complaint to raise this claim. We granted an alternative writ based upon the allegations of the complaint and the accompanying argument presented by Triplett, which attacked the constitutionality of R.C. 2909.32 and 2909.33 as applied to the appointment of counsel. The parties presented evidence without notice that the claim that the statutes did not apply was being raised. The Attorney General expressly sought to intervene in this case to uphold the constitutionality of R.C. 2909.32 and 2909.33. Under comparable circumstances, we have held that we need not consider the merits of the improperly raised claim. See *State ex rel. Plain Dealer Publishing Co. v. Cleveland,* 106 Ohio St.3d 70, 2005-Ohio-3807, 831 N.E.2d 987, ¶ 64.

{¶ 27} Nevertheless, we hold that this issue is properly before us, even though Triplett did not specifically raise this issue in his complaint and brief in support, because his complaint's primary prohibition claim is broad enough to encompass the issue. More significantly, neither the municipal court respondents nor the Attorney General objects to the resolution of this issue, and they have presented argument concerning it. There is no evidence or assertion that Triplett's nonconstitutional claim prejudiced respondents in defending against this prohibition action. See Civ.R. 15(B) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings"); see, also, *In re Election Contest of Democratic Primary Held May 4, 1999 for Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 264, 725 N.E.2d 271; *State ex rel. Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 391, 715 N.E.2d 179; and *State ex rel. BSW Dev. Group v. Dayton* (1998), 83 Ohio St.3d 338, 344, 699 N.E.2d 1271 (holding that we need not consider certain claims when those claims had not been tried with the express or implied consent of the parties pursuant to Civ.R. 15(B)). Accordingly, we proceed to consider this claim.

{¶ 28} Triplett and amici initially assert that the municipal court respondents are exercising judicial or quasi-judicial power by requiring that attorneys seeking court appointments complete the declaration. This assertion has merit. A court or judge exercises judicial authority in appointing counsel. See, e.g., *State ex rel. Gains v. Maloney,* 102 Ohio St.3d 254, 2004-Ohio-2658, 809 N.E.2d 24 (writ of prohibition granted to prevent common pleas court judge from appointing outside counsel to represent judge in habeas corpus case); *State ex rel. Marsteller v. Maloney,* Mahoning App. No. 04–MA–279, 2005-Ohio-1836, 2005 WL 911140, ¶ 29 (judge had exercised judicial authority for purposes of prohibition claim by appointing counsel to represent estate to pursue appeal); see, also, *Eichenberger v. Petree* (1992), 76 Ohio App.3d 779, 782, 603 N.E.2d 366 (appointment of attorney by court to represent an indigent client "is clearly a judicial act").

{¶ 29} With regard to the second element needed to establish his right to a writ of prohibition, Triplett and amici claim that the municipal court respondents' exercise of their power to require an attorney seeking court appointments to complete the Ohio Patriot Act declaration before the attorney is entitled to be paid for an appointment is unauthorized by law because the act does not mandate that the declaration be completed in these circumstances. Conversely, respondents claim that the municipal court's practice is expressly authorized by the act, specifically R.C. 2909.33.

{¶ 30} In interpreting a statute, a court's paramount concern is legislative intent. *State ex rel. United States Steel Corp. v. Zaleski*, 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 12. To determine this intent, we read words and phrases in context and construe them in accordance with the rules of grammar and common usage. R.C. 1.42; *Hedges v. Nationwide Mut. Ins. Co.*, 109 Ohio St.3d 70, 2006-Ohio-1926, 846 N.E.2d 16, ¶ 24.

{¶ 31} R.C. 2909.33 provides:

{¶ 32} "(A)(1) The director of public safety shall prepare a document to serve as a declaration of material assistance/nonassistance for the state, any instrumentality of the state, and any political subdivision of the state to use to determine whether any person, company, affiliated group, or organization, or person who holds, owns, or otherwise has a controlling interest in a company, affiliated group, or organization, has provided material assistance to an organization listed on the United States department of state terrorist exclusion list. The declaration shall be substantially in the same format and of the same content as set forth in division (A)(2)(b) of section 2909.32 of the Revised Code.

{¶ 33} "(2) The director shall make the declaration of material assistance/nonassistance available to the state, instrumentalities of the state, and political subdivisions of the state, along with a then-current copy of the terrorist exclusion list. The director may adopt rules that govern the preparation of the declaration and the distribution of the declaration and terrorist exclusion list.

{¶ 34} "(3)(a) Any state agency, instrumentality, or political subdivision of the state, for purposes of business it conducts and funding it provides, may adopt a procedure under which it precertifies any person, company, affiliated group, or organization as not providing material assistance to an organization on the terrorist exclusion list. The precertification this division describes shall be granted to any person, company, affiliated group, or organization that submits a completed copy of the declaration prepared pursuant to this section, with an answer of 'no' to all questions. A precertification pursuant to this division is effective for one year.

{¶ 35} "(b) Any person, company, affiliated group, or organization that is precertified pursuant to this division and that takes any action or learns of

anything that would result in an answer of 'yes' to any question on the declaration of material assistance/nonassistance this division requires, shall cease to represent that it is precertified and, within thirty days of taking that action or learning the new information, shall notify every state agency, instrumentality, or political subdivision with which it is precertified to request the precertification be rescinded.

{¶ 36} "(c) When applying for a contract, falsely representing precertification, or representing precertification when that precertification has been rescinded or should have been rescinded pursuant to this division, is a felony of the fifth degree.

{¶ 37} "(B) Any person who is provided a declaration of material assistance/nonassistance pursuant to this section shall complete that declaration. Any answer of 'yes' to any question, or the failure to answer 'no' to any question, on the declaration shall serve for purposes of this section as a disclosure of the provision of material assistance to an organization that is listed on the terrorist exclusion list.

{¶ 38} "(C) Prior to entering into a contract to conduct business or receive funding, any person, company, affiliated group, or organization, and any person who holds, owns, or otherwise has a controlling interest in a company, affiliated group, or organization that conducts any business with or receives funding in an aggregate amount greater than one hundred thousand dollars annually from the state, any instrumentality of the state, and any political subdivision of the state, excluding the amount of any personal benefit, shall certify that it does not provide material assistance to any organization on the United States department of state terrorist exclusion list. The certification shall be made by completing the declaration of material assistance/nonassistance described in division (A) of this section.

{¶ 39} "(D)(1) The state, an instrumentality of the state, or a political subdivision of the state shall conduct no business with or provide any funding to any person, company, affiliated group or organization, or any person who has a controlling interest in a company, affiliated group, or organization unless that person, company, affiliated group, or organization is certified as division (C) of this section requires. The state, instrumentality, or subdivision shall provide the declaration prepared pursuant to division (A) of this section, along with a then-current copy of the terrorist exclusion list, to any person, company, affiliated group, or organization that is not precertified and for which certification is required. If a contract is entered into pursuant to competitive bidding or another competitive process, the state, instrumentality, or subdivision need provide the declaration and list only to the person selected and only if that person is not precertified.

{¶ 40} "(2) No person, company, affiliated group or organization, or any person who holds, owns, or otherwise has a controlling interest in a company, affiliated group, or organization shall enter into a contract to conduct business with or receive funding from the state, an instrumentality of the state, or a political subdivision of the state unless it is certified as division (C) of this section requires."

{¶ 41} The preeminent provision of R.C. 2909.33 is contained in subdivision (C), which requires that before "entering into a contract to conduct business or receive funding" with a political subdivision of the state, any person conducting business with or receiving funding *in an aggregate amount greater than $100,000 per year* must certify that the person does not provide material assistance to any organization on the United States Department of State terrorist-exclusion list by completing the declaration. This declaration is the form prepared by the Director of Public Safety that was sent by the municipal court respondents to Triplett and other attorneys seeking court appointments. The municipal court respondents argued in their motion to dismiss that this declaration is properly founded on the state's authority to contract.

{¶ 42} The municipal court respondents' assertion that their demand that Triplett and other attorneys seeking court appointments complete this declaration was authorized by R.C. 2909.33 is incorrect for the following reasons.

{¶ 43} First, the parties stipulated that Triplett does not earn more than $100,000 per year from his court appointments. Under the clear language of R.C. 2909.33(C), Triplett is not required to complete the declaration to be eligible for a court appointment.

{¶ 44} Second, the municipal court respondents admit that R.C. 2909.33 is inapplicable to "court appointments in Bellefontaine Municipal Court." They claim that the declaration "does not impact in any manner one's ability to receive court appointments in the Bellefontaine Municipal Court."

{¶ 45} Third, R.C. 2909.33(D)(1) does not authorize the municipal court respondents or any other state entity to withhold funding for any court appointment of Triplett. It is true that R.C. 2909.33(D)(1) specifies that "[t]he state, an instrumentality of the state, or a political subdivision of the state shall conduct no business with or provide any funding" to any person or entity unless that person or entity is "certified as division (C) of this section requires." But the key phrase is "as division (C) of this section requires." R.C. 2909.33(C) applies only to persons and entities receiving funding pursuant to government contracts in an aggregate amount greater than $100,000. Therefore, the prohibition in R.C. 2909.33(D) is similarly limited. See *State ex rel. Choices for South–Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 46

(statutory provisions relating to the same subject matter must be construed in pari materia and harmonized so as to give full effect to the provisions).

{¶ 46} The Attorney General argues that, regardless of these provisions of R.C. 2909.33, the municipal court respondents are justified in requiring that attorneys seeking court appointments complete the declaration because it is an appropriate precertification under R.C. 2909.33(A)(3)(a), which gives state agencies, instrumentalities, and political subdivisions the discretion to "adopt a procedure under which it precertifies" any person or entity "as not providing material assistance to an organization on the terrorist exclusion list." For the following reasons, the Attorney General's argument lacks merit.

{¶ 47} First, there is no evidence that the municipal court respondents were precertifying attorneys under R.C. 2909.33(A)(3)(a). The municipal court respondents do not argue that they were doing so. In fact, they used the declaration required by R.C. 2909.33(C) instead of the precertification form permitted by R.C. 2909.33(A)(3)(a) that was prepared by the Director of Public Safety. There was also no properly adopted local court rule requiring precertification.

{¶ 48} Second, the apparent purpose of the precertification provision is to allow persons and entities who must sign the declaration form to avoid doing so on multiple occasions. See R.C. 2909.33(A)(3)(a) ("A precertification pursuant to this division is effective for one year"); R.C. 2909.33(D)(1) ("The state, instrumentality, or subdivision shall provide the declaration prepared pursuant to division (A) of this section, along with a then-current copy of the terrorist exclusion list, to any person, company, affiliated group, or organization that is not precertified and for which certification is required"). There is no indication in either the text of R.C. 2909.33 or the Legislative Service Commission's analysis of S.B. 9 that the General Assembly intended to authorize the precertification of persons pursuant to R.C. 2909.33(A)(3)(a) who will not be required to file the declaration required by R.C. 2909.33(C). See LSC Analysis of Am.Sub.S.B. 9, http://lsc.state.oh.us. This interpretation of precertification is also supported by R.C. 2909.33(A)(3)(c), which provides that a false representation of precertification "[w]hen applying for a contract" is a felony. This indicates that precertification is not intended to apply to noncontractual situations like a court's appointment of counsel.

{¶ 49} Therefore, notwithstanding the respondents' arguments to the contrary, R.C. 2909.33 did not authorize them to require attorneys seeking court appointments who make less than $100,000 annually from these appointments, like Triplett, to complete the declaration of material assistance/nonassistance. Therefore, the municipal court respondents' requirement is an unauthorized exercise of judicial power.

{¶ 50} Finally, because neither R.C. 2909.33 nor any other statute, rule, or precedent authorizes the municipal court respondents to require Triplett and

other attorneys who make less than $100,000 annually from court appointments to complete the declaration, the municipal court respondents patently and unambiguously lacked jurisdiction to do so, and the availability of an adequate remedy is immaterial. See *State ex rel. Buck v. Maloney,* 102 Ohio St.3d 250, 2004-Ohio-2590, 809 N.E.2d 20, ¶ 16 (if an inferior court patently and unambiguously lacks jurisdiction to act, prohibition will issue to prevent the further unauthorized exercise of jurisdiction and to correct the results of any previous unauthorized acts). Therefore, we grant the requested writ of prohibition to prevent the municipal court respondents from requiring attorneys who seek court appointments to represent indigent defendants and make less than $100,000 per year from those appointments to complete the declaration. See *Gains,* 102 Ohio St.3d 254, 2004-Ohio-2658, 809 N.E.2d 24, ¶ 11 ("Because neither the pertinent statutes nor precedent authorized [the judge] to appoint outside counsel in the habeas corpus case, we grant the requested writ of prohibition").

### Prohibition: Constitutionality of R.C. 2909.32 and 2909.33

{¶ 51} Triplett also alleged in his complaint and brief in support that R.C. 2909.32 and 2909.33 are unconstitutional because they usurp this court's exclusive jurisdiction under Section 2(B)(1)(g), Article IV of the Ohio Constitution over all matters related to the practice of law in Ohio. Following the issuance of the alternative writ, however, Triplett specified in his merit brief that "[t]his is not the proper venue for a challenge to the constitutionality of the law, and [he] is doing no such thing." The amici curiae also do not challenge the constitutionality of these statutes.

{¶ 52} By now expressly disclaiming reliance on his original challenge to the constitutionality of R.C. 2909.32 and 2909.33, Triplett has waived that issue. See, e.g., *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office* (1999), 87 Ohio St.3d 158, 159, 718 N.E.2d 426 (court did not address whether relator in mandamus case was entitled to relief under R.C. 149.43, the Public Records Act, because he disclaimed relief under the statute).

{¶ 53} More important, we need not resolve this issue because Triplett is entitled to the writ based on his claim that R.C. 2909.33 did not authorize the municipal court respondents to require that he complete and return the declaration when seeking court appointments. Consequently, resolution of the constitutional issue is unnecessary. *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 34, quoting *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114 (" '[c]ourts decide constitutional issues only when absolutely necessary' ").

Legislative Policy for the Patriot Act

{¶ 54} Although Triplett recognized in his brief in support of his complaint that this is not the forum to debate the policy behind the enactment of the Ohio Patriot Act, he nevertheless proceeds to do so by claiming that the statutory requirement that persons and entities sign the declaration is "deeply offensive," does "nothing to prevent terrorism," and is foolish.

{¶ 55} We cannot address these contentions. " 'It is not a court's function to pass judgment on the wisdom of the legislation, for that is the task of the legislative body which enacted the legislation.' " *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, ¶ 14, quoting *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 48, 616 N.E.2d 163. "The Ohio General Assembly, and not this court, is the proper body to resolve public policy issues." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 14.

{¶ 56} In addition, as respondents note, Triplett's contention that the Ohio Patriot Act would prevent attorneys from representing terrorists because this would constitute prohibited material assistance to the terrorists lacks merit. Legal representation does not constitute "material support or resources" for purposes of the Ohio Patriot Act. R.C. 2909.21(I) and 2909.32(A)(2)(b).

Conclusion

{¶ 57} Triplett presents a sometimes perplexing and internally inconsistent argument in support of his claim for extraordinary relief in prohibition. He first challenged the constitutionality of the Ohio Patriot Act but later abandoned that argument. He raises the inapplicability of the Ohio Patriot Act but he did not include that claim in his complaint or seek leave to amend his complaint to raise the claim. He acknowledged the impropriety of prohibition to second-guess the wisdom of the legislative policies behind the Ohio Patriot Act but then attacked those policies. He seeks to prevent respondents from removing his name from the list of eligible attorneys for municipal court appointment, but there is insufficient evidence that respondents either have done so or are about to do so.

{¶ 58} The municipal court respondents have also presented inconsistent contentions, e.g., first claiming that they are exercising judicial authority and then contending that they are not.

{¶ 59} Despite these shortcomings in the parties' arguments, respondents have consented to the court's resolution of Triplett's nonconstitutional claim, and Triplett has established his entitlement to a writ of prohibition to prevent the municipal court respondents from requiring him to complete the declaration regarding material assistance/nonassistance to a terrorist organization before he can be appointed to represent indigent defendants. He has not established his entitlement to a writ of prohibition to prevent the municipal court respondents

from declaring that the failure of an eligible attorney to complete the declaration will disqualify that attorney from obtaining court appointments and forbidding the removal of his name from the eligible-attorneys list for court appointments, because there is no evidence that the municipal court officials have done so or intend to do so.

{¶ 60} Accordingly, we grant a writ of prohibition to prevent the municipal court respondents from requiring that Triplett complete and return the declaration regarding material assistance/nonassistance to a terrorist organization. We deny the remainder of the requested writ.

Writ granted in part<br>and denied in part.

RESNICK, PFEIFER, O'CONNOR and O'DONNELL, JJ., concur.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

MOYER, C.J., and LANZINGER, J., dissent.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 61} I respectfully dissent from the majority's denying in part the writ of prohibition to prevent Triplett's disqualification from court appointments for failure to sign the Ohio Patriot Act declaration. Instead, I would grant the writ in its entirety. I recognize that the partial grant produces the same result— Triplett does not need to file the declaration—but I do not agree with the rational for the partial denial.

{¶ 62} The majority denies a writ as to the issue of whether the Bellefontaine Municipal Court may disqualify Triplett from its appointment list. The court reasons that Triplett remains on the appointed list and has in fact received an appointment since this action was filed. The court contends in this respect only that Triplett *cannot be paid* for his appointment. This assertion makes the fact that the court is still willing to appoint Triplett meaningless. It turns Triplett's representation into automatic pro bono work. Therefore, I would grant the entire writ.

---

**MOYER, C.J., dissenting.**

{¶ 63} While I do not disagree with the majority's holding that the Ohio Patriot Act does not require an attorney to sign a declaration that he or she has not provided material assistance to a terrorist organization, I must dissent because I

believe that the court need not grant this relief. This is not a prohibition case. A writ of prohibition is "[a]n extraordinary writ issued by an appellate court to prevent a lower court from exceeding its jurisdiction." Black's Law Dictionary (8th Ed.2004) 1248. See *State ex rel. Carmody v. Justice* (1926), 114 Ohio St. 94, 97, 150 N.E. 430 ("The writ of prohibition is a specific remedy of an extraordinary character, and issues because of the absence or inadequacy of ordinary remedies. Its proper scope and purpose is to keep inferior courts and tribunals within the limits of their own jurisdiction, and prevent their encroachment upon the jurisdiction of other tribunals"); *State ex rel. Harrison v. Perry* (1925), 113 Ohio St. 641, 646, 150 N.E. 78, quoting *State ex rel. Nolan v. ClenDening* (1915), 93 Ohio St. 264, 112 N.E. 1029 (" 'The writ may be invoked against inferior courts or inferior tribunals, ministerial or otherwise, that possess incidentally judicial or quasi judicial powers, to keep such courts or tribunals within the limits of their own jurisdiction' "). It is a tool for correcting jurisdictional issues only; it should not be used as a substitute for an appeal or another action.

{¶ 64} We have consistently held that a writ of prohibition is an extraordinary writ and should be issued only under limited circumstances. " 'The writ of prohibition is a high prerogative writ, to be used with great caution in the furtherance of justice and only where there is no other regular, ordinary and adequate remedy.' " Id., quoting *State ex rel. Nolan v. ClenDening* (1915), 93 Ohio St. 264, 112 N.E. 1029.

{¶ 65} To that end, we have adopted and consistently applied a three-pronged test: "In order to be entitled to the requested writ of prohibition, relators must establish that (1) the [respondent] is about to exercise quasi-judicial [or judicial] power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law." *State ex rel. Brown v. Butler Cty. Bd. of Elections,* 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 21; see, also, *State ex rel. Caley v. Tax Comm. of Ohio* (1934), 129 Ohio St. 83, 87, 1 O.O. 415, 193 N.E. 751. Specifically amplifying the third prong, this court has stated that "[i]t is a general principle relative to the extraordinary writ of prohibition that the writ will not issue where there is an adequate remedy at law, or in equity, readily available to the applicant, either by appeal, or writ of error, or any other writ, motion, or proceeding appropriate to the relief, such as injunction, *mandamus,* quo warranto, etc." (Emphasis added). *Harrison,* 113 Ohio St. at 648–649, 150 N.E. 78.

{¶ 66} When this law is applied to the facts before us, it is clear that a writ of prohibition should not lie. First, as to the second prong of the test, the power the municipal court exercised to require relator to complete the declaration was authorized by statute. R.C. 2909.32 et seq. While the majority ultimately has determined that the Ohio Patriot Act does not apply in this situation, that result

was not patently and unambiguously clear. The trial court applied the statute and produced a result that this court has found to be in error.

{¶ 67} The writ of prohibition can and should be used only to prevent the clearly erroneous assumption of jurisdiction by a court or other officer. In *State ex rel. Connor v. McGough* (1989), 46 Ohio St.3d 188, 191, 546 N.E.2d 407, we held that while "[p]rohibition is not a substitute for an appeal[,] * * * since personal jurisdiction is so totally lacking in this case, we hold it to be too harsh to require [relator] to defend major litigation through an appeal simply to demonstrate a right so well established." However, when applying the second prong of the test, we have also held that "'[w]here a court has full and complete jurisdiction of the subject-matter of an action therein pending, a writ of prohibition will not be awarded to prevent an anticipated erroneous judgment. An adequate remedy is available by proceeding in error.'" *State ex rel. Caley v. Tax Comm. of Ohio* (1934), 129 Ohio St. 83, 88, 1 O.O. 415, 193 N.E. 751, quoting *State ex rel. Carmody v. Justice* (1926), 114 Ohio St. 94, 150 N.E. 430. A municipal court clearly has authority to authorize compensation for assigned attorneys who represent indigent persons. The facts of this case fall into the latter precedent, that is, the erroneous application of clearly granted jurisdiction, rather than the former precedent of a court attempting to exercise jurisdiction it clearly does not possess.

{¶ 68} This is not a case in which the lack of jurisdiction is so obvious, such as when a municipal court seeks to award a judgment in excess of the statutory limit of its jurisdiction or when a juvenile court seeks to exercise jurisdiction over a felony-murder case. A writ of prohibition is not a substitute for an appeal, and when it is not patently and unambiguously clear that a court is about to exercise jurisdiction it does not possess, the writ should not lie.

{¶ 69} Second, the relator has other adequate remedies in the course of law through an action for declaratory judgment, an appeal, an injunction, or even through the writ of mandamus. At the very least, Triplett's action is premature. While it would have been inconvenient, Triplett should have represented his client and, upon completion of the representation, applied for compensation. Once the municipal court denied his request for compensation, Triplett could have filed a complaint for a writ of mandamus that would order the municipal court to compensate him. This court has consistently declined to issue a writ of prohibition simply to avoid or expedite expensive litigation. *State ex rel. Cleveland Trust Co. v. Pethtel* (1940), 137 Ohio St. 525, 19 O.O 240, 30 N.E.2d 991. See, also, *State ex rel. Caley v. Tax Comm. of Ohio* (1934), 129 Ohio St. 83, 88, 193 N.E. 751 ("The principle is well established in Ohio that such writ may not be employed as a convenient short cut to a final determination of rights of litigants").

{¶ 70} Too often, lawyers mistake a writ of prohibition for the opposite of a writ of mandamus. It is not and should not be so used. I would deny the requested writ of prohibition because the municipal court has the authority to act on the matter before it and relator has an adequate remedy at law.

LANZINGER, J., concurs in the foregoing opinion.

———

Jeffrey M. Gamso, Legal Director, ACLU of Ohio Foundation, Inc., for relator.

Daniel L. Bennett, Assistant Bellefontaine Municipal Prosecuting Attorney, for respondents Judge John L. Ross, Clerk Marty Carmean, and Bellefontaine Municipal Court.

Jim Petro, Attorney General, and Frank M. Strigari, Assistant Attorney General, for intervening respondent Attorney General of Ohio.

David H. Bodiker, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender; Charles B. Clovis, urging granting of writ for amici curiae Ohio Public Defender and Ohio Association of Criminal Defense Lawyers.