CINCINNATI CITY SCHOOL DISTRICT BOARD OF EDUCATION, Appellee,

v.

STATE BOARD OF EDUCATION OF OHIO et al., Appellants.

[Cite as *Cincinnati School Dist. Bd. of Edn. v. State Bd. of Edn. of Ohio,* 176 Ohio App.3d 157, 2008-Ohio-1434.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070084.

Decided March 28, 2008.

**158**

Bricker & Eckler L.L.P., Nicholas A. Pittner, James J. Hughes III, Jennifer A. Flint, and C. Allen Shaffer, for appellee.

Marc Dann, Attorney General, and Todd R. Marti, Principal Assistant Attorney General, for appellants.

HILDEBRANDT, Presiding Judge.

{¶ 1} This is a case about state funding to public school districts, including the community schools within each district, under a system referred to as the "school foundation program." For public school districts, school-foundation payments are based in part on the number of district resident students attending, among others, traditional schools and community schools during the first full week of October, as reported by the school district. The question before us is whether the trial court properly determined that the Ohio Department of Education ("the ODE") had utilized the wrong data in calculating the number of students attending community schools in the Cincinnati School District during fiscal year 2005 ("FY 05") and subsequent years, resulting in reduced funding (transitional aid and other guarantees) for Cincinnati Public Schools during fiscal years 2006 and 2007 by millions of dollars.

{¶ 2} After reviewing the statutory scheme for school funding, we agree with the trial court. Ohio law mandates that the data to be used to calculate the number of community-school students in each district for purposes of annual school funding is the data submitted by the superintendent of each school district based on the October count of students, not the data reported monthly by the community schools, which is known as the community-school average daily membership ("CSADM"). Accordingly, we affirm the trial court's entry of summary judgment for plaintiff-appellee Cincinnati City School District Board of Education ("the District") on its fourth and sixth claims that the defendants had unlawfully reduced the District's funding guarantees and had used an improper calculation to determine the District's transitional aid.

{¶ 3} The defendants-appellants are the State of Ohio Board of Education, which is the governing body charged with general supervision of public education in the state, the Superintendent of Public Instruction, Susan Tave Zelman, and the Ohio Department of Education, which is the administrative unit and organization through which the policies, directives, and powers of the State Board of Education are administered. We refer to these Ohio parties collectively as "the ODE."

## I.  General Overview—School Funding

{¶ 4} The parties do not dispute the facts. School-foundation funding is determined by a formula described in R.C. Chapter 3317. For school districts, one of the factors in the formula is based on the number of full-time students actually receiving educational services from the school district and the number of students who are entitled to attend school in the district but are receiving educational services from a community school.[1] This number is referred to as the "average daily membership" or the "Formula ADM." During FY 05, R.C. 3317.03(A) required that each school district calculate and certify to the ODE its Formula ADM. The number of students so certified is based on a single count of students that occurs during the first full week of October ("the October count").[2]

{¶ 5} Although a public school district is statutorily required to include in its Formula ADM the number of students residing in the school district who are attending a community school, that number is not used to determine the amount of funding that is provided to community schools.

{¶ 6} Since the inception of community schools, the ODE has maintained two separate reporting and payment systems for the distribution of school-foundation funds to public school districts and to community schools. School-district funding for the entire year is based upon the number of students identified in the October count or the Formula ADM. Then from those school-district funds, the ODE deducts funds that are paid to community schools within that district based upon the number of community-school students reported by each community school in the monthly CSADM report. These web-based CSADM reports are governed by guidelines and regulations developed by the ODE.

{¶ 7} There is an important distinction between the "snapshot" concept that public schools use to count pupils at one time early in the year and the monthly CSADM report. For school districts, once the Formula ADM has been certified, school-district funding is neither increased nor decreased by the enrollment or withdrawal of pupils after the October count. (The sole exception is the

---

1. R.C. 3317.03(A)(1) and (2).

2. R.C. 3317.03(A).

enrollment of a district student in a community school after the October count, when such a student has not been included in the Formula ADM.[3]) In contrast, funding for community schools is adjusted monthly based on the number of students reported in the CSADM report. Thus, funding may increase or decrease with the enrollment or withdrawal of a pupil in a community school. So, unlike public schools, community schools are paid for students upon enrollment, but public schools must absorb new students without commensurate additional funding.

## II. Substituting Data Leads to Lawsuit

{¶ 8} Prior to FY 05, the ODE had used the Formula ADM to calculate school-foundation funding for public school districts. But during FY 05 the ODE noted disparities between the number of community-school students the District had reported in its October count and the number reported by community schools through CSADM—the numbers reported by CSADM were smaller. Thus, although the District had certified its Formula ADM to the ODE and the ODE had distributed funds based on that number, the ODE decided to adjust the Formula ADM for FY 05 by using the CSADM numbers for calculating that portion of the Formula ADM based on the number of District residents attending community schools. Although the ODE admits that the District advanced "legitimate bases for disputing the accuracy of the CSADM," the ODE believed that the CSADM data was more accurate and chose to recalculate the FY 05 funding using that data.

{¶ 9} This had a significant impact on the District. The ODE had reduced the Formula ADM certified by the District by 542.92 full-time equivalent students. This resulted in the ODE seeking to recoup funds from the District in the amount of $2,444,170 for FY 05 and reduced the District's transitional-aid payments by approximately $2,281,740 in FY 2006 and by a similar amount in FY 2007. (Transitional aid for FY 2006 and FY 2007, a separate funding stream that supplements basic state funding, is based on the amount of basic state funding received during FY 2005, which in turn was partially based on the number of community school students.)

{¶ 10} Ultimately, the District sued the ODE after settlement negotiations had failed, seeking a declaratory judgment regarding how the calculation for community-school students reported in the Formula ADM was to be made and an injunction preventing the ODE from reducing funding. Because there were no facts in dispute, both parties moved for summary judgment. The trial court rejected the District's contractual, promissory-estoppel, and constitutional claims, but entered summary judgment for the District on its statutory claims.

---

**3.** See R.C. 3317.03(F)(3).

### III. Assignment of Error

{¶ 11} In its appeal, the ODE brings forth one assignment of error, asserting that the trial court erred in holding that the Ohio Revised Code precludes consideration of anything other than the data submitted by a traditional school district based on the October count when calculating the number of community-school students residing in that district for purposes of determining state funding. For the following reasons, we overrule this assignment of error.

{¶ 12} We review summary-judgment determinations de novo, without deference to the trial court.[4] Summary judgment should be granted only when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds, when viewing the evidence in the light most favorable to the nonmoving party, can only come to a conclusion adverse to the nonmoving party.[5]

{¶ 13} The issue is how to calculate Cincinnati's Formula ADM for purposes of the funding formula set forth in R.C. 3317.022(A). The trial court determined that the numbers submitted in the October count by the District was the only thing that could be considered. But the ODE argues that R.C. 3317.03(C)(2) and 3314.08(L)(2), when read together, require the use of CSADM data. We hold that a plain reading of these and related statutes belies this assertion.

{¶ 14} In statutory interpretation, the court's primary concern is legislative intent.[6] In determining legislative intent, the court must first look to the plain language of a statute itself.[7] The General Assembly's construction of a statute as provided by a definitional section controls the application of the statute.[8] Finally, statutes that relate to the same subject matter or refer to one another must be construed in pari materia and harmonized to give full effect to the statutes.[9]

---

4. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.

5. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

6. *State ex rel. Triplett v. Ross*, 111 Ohio St.3d 231, 2006-Ohio-4705, 855 N.E.2d 1174, at ¶ 30.

7. *State ex rel. Burrows v. Indus. Comm.* (1997), 78 Ohio St.3d 78, 81, 676 N.E.2d 519.

8. *Montgomery Cty. Bd. of Commrs. v. Pub. Util. Comm.* (1986), 28 Ohio St.3d 171, 175, 28 OBR 262, 503 N.E.2d 167, citing *Ohio Civ. Rights Comm. v. Parklawn Manor* (1975), 41 Ohio St.2d 47, 50, 70 O.O.2d 148, 322 N.E.2d 642.

9. *State ex rel. Choices for South–Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, at ¶ 46.

#### IV.  Plain Reading of Statutes Mandates Use of October Count Data Only

{¶ 15} Funding for public-school districts is based on the formula set forth in R.C. 3317.022(A).  That formula consists of several factors, one of them being "[F]ormula ADM," which is a defined term in the code.  Formula ADM is defined by R.C. 3317.02(D) as "the final number * * * reported pursuant to division (A) of section 3317.03 of the Revised Code."  Thus, we must look to R.C. 3317.03(A) to determine how to calculate Formula ADM.

{¶ 16} R.C. 3317.03(A) provides the following:

{¶ 17} "The superintendent of each city * * * school district * * * shall * * * certify to the state board of education on or before the fifteenth day of October in each year for the first full school week in October the formula ADM * * *.

{¶ 18} "The formula ADM shall consist of the average daily membership during such week of the sum of the following:

{¶ 19} "(1) On an [full-time equivalency] basis, the number of students in grades kindergarten through twelve receiving any educational services from the district * * *.  * * *

{¶ 20} "(2) On an FTE basis, * * * the number of students entitled to attend school in the district * * *, but receiving educational services in grades kindergarten through twelve from one or more of the following entities:

{¶ 21} "(a) A community school pursuant to Chapter 3314 of the Revised Code." [10]

{¶ 22} From a plain reading of R.C. 3317.02(D) and 3317.03(A), the Formula ADM includes the number of students reported by the school district during the October count.  The statutory definition of "[F]ormula ADM" does not refer to data generated by CSADM.  And it would not, as the parties have agreed, that the statutory scheme reflects two different reporting and payment systems to fund traditional public schools and community schools.  Public-school-district funding is based on the data obtained during the October count, whereas funding for community schools is based on the monthly CSADM data.

#### V.  R.C. 3317.03(C)(2) and 3314.08(L)(2)

{¶ 23} Despite agreeing that CSADM data triggers the deduction and payment of school-foundation funds for students in community schools, the ODE maintains that CSADM numbers, not the numbers obtained through the October count, should be used to calculate the number of community-school students for pur-

---

10.  See R.C. 3317.03(A)(1) and (2)(a).

poses of Formula ADM. In this respect, the ODE relies upon R.C. 3317.03(C)(2) and 3314.08(L)(2).

{¶ 24} R.C. 3317.03(C)(2) provides that community-school students "shall be counted in the formula ADM * * * for the same proportion of the school year that the student is counted in the enrollment of the community school for purposes of section 3314.08 of the Revised Code." R.C. 3314.08(L)(2) provides that a community-school student is not "enrolled" in a community school until the student is reported in a CSADM report. Thus, the ODE maintains that these statutes should be read to prohibit the inclusion of a community-school student in the District's Formula ADM unless the student is listed in a CSADM report.

{¶ 25} We disagree with this interpretation. First, to accept the ODE's interpretation of these two statutes would require this court to ignore R.C. 3317.02(D), which defines Formula ADM, and, consequently, to ignore R.C. 3317.03(A)(2). We cannot do this. When a statute is interpreted, the entire statute is intended to be effective.[11] As we have noted previously, R.C. 3317.02(D) defines Formula ADM as the number reported pursuant to division (A) of R.C. 3317.03, and R.C. 3317.03(A) requires each superintendent of each public school district to report Formula ADM based on the October count. Finally, R.C. 3317.022(A) mandates that "[t]he department of education shall compute and distribute state base cost funding to each [public] school district * * *" based on the use of "formula ADM." Thus, for public-school districts, school-foundation payments are based on a statutory formula that considers, among other factors, the district's Formula ADM, which does not involve the use of CSADM data.

{¶ 26} Next, we note that changes to the law regarding the counting of community-school students for funding purposes were made in April 2003 pursuant to Am.Sub.H.B. No. 364 ("H.B. 364"). Specifically, subsections (C)(2) and (F)(3) were added to R.C. 3317.03, and subsection (2) was added to R.C. 3314.08(L). There is no indication in either the texts of these sections or the Legislative Service Commission's analysis of H.B. 364 that the General Assembly intended to require that CSADM data replace the October count to calculate the Formula ADM for state funding purposes. (Briefly, we note that the Ohio Supreme Court has established that legislative history, including Legislative Service Commission analyses, is an appropriate tool to be used by courts in determining the intent of legislation.[12])

---

11. R.C. 1.47(B).

12. See *Ross*, supra, 111 Ohio St.3d 231, 2006-Ohio-4705, 855 N.E.2d 1174, at ¶ 48.

{¶ 27} R.C. 3317.03(C)(2) and (F)(3) were added to address the issue of students who enroll in community schools after the October count, but were not included in the resident school district's Formula ADM for funding purposes.[13] When this had happened prior to H.B. 364, the public school district had money deducted from its foundation payments for that student without being credited with state funds to offset the transfer. R.C. 3317.03(F)(3) corrected this problem by providing that if a student attending a community school was not included in the Formula ADM, "the department of education shall adjust the [F]ormula ADM of that school district to include the student in accordance with division (C)(2) of this section." R.C. 3317.03(C)(2) operates to limit the credit to the public school district to "the same proportion of the school year that the student is counted in the enrollment of the community school." To calculate that credit, this section refers to R.C. 3314.08(L)(2), which provides when a student is considered "enrolled" in a community school such that state funding is triggered for that community school.

{¶ 28} These sections added to the statutory scheme in 2003 were only meant to correct a specific problem. They were not intended to replace the reporting system for state-funding purposes. To read these sections as requiring a change in the way that Formula ADM is calculated is improper and not supported by the text and the legislative history. If the General Assembly had intended that CSADM data be used to assist in calculating the Formula ADM, it would have indicated so in H.B. 364. It did not. Further, the General Assembly has recently amended sections of R.C. Chapters 3317 and 3314 in H.B. 119, but it has again chosen not to amend the definition of Formula ADM or to alter the two different reporting and payment systems for Formula ADM [14] and CSADM.[15]

{¶ 29} Accordingly, because statutory law requires the use of Formula ADM only to calculate state funding for traditional school districts, we overrule the single assignment of error. The judgment of the trial court is affirmed.

Judgment affirmed.

SUNDERMANN and HENDON, JJ., concur.

---

**13.** See Legislative Service Commission Bill Analysis of H.B. 364, at 28–29.

**14.** See R.C. 3317.03.

**15.** See R.C. 3314.08; Ohio Adm.Code 3301–102–06.